UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBORAH M. SHALLENBURG and
MICHAEL P. SHALLENBURG,
individuals,

    Plaintiffs,

v.

Case No.: 8:18-cv-2225-T-36TGW

PNC BANK, NATIONAL
ASSOCIATION, d/b/a PNC MORTGAGE,
and JAMES E. ALBERTELLI, P.A. a Florida
for-profit corporation, d/b/a "ALAW"

    Defendants.
_____/

## AMENDED[1] COMPLAINT

**COME NOW**, Plaintiffs, DEBORAH M. SHALLENBURG and MICHAEL P. SHALLENBURG (hereinafter, "Plaintiffs"), by and through the undersigned counsel, and hereby sue Defendants, JAMES E. ALBERTELLI, P.A. d/b/a "ALAW" (hereinafter, "ALAW") and PNC BANK, NATIONAL ASSOCIATION, d/b/a PNC MORTGAGE (hereinafter, "PNC") (hereinafter collectively, "Defendants"). In support thereof, Plaintiffs state:

### PRELIMINARY STATEMENT

1. This is an action for damages brought by individual consumers for Defendants' violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA") and ALAW's violations of the Fair Debt Collection Practices Act, 15 United States Code, Section 1692a *et. seq* (hereinafter, the "FDCPA"), wherein Defendants unlawfully attempted to collect—and did collect—an alleged and illegitimate debt directly from

---

[1] Filed pursuant to the Court's Order dated February 14, 2019 [Dkt. 48].

1

Plaintiffs by charging unauthorized and unsubstantiated fees incident to the payoff of Plaintiffs' mortgage and associated note.

## JURISDICTION, VENUE & PARTIES

2. This is an action for damages that exceeds $15,000.00, exclusive of attorneys' fees and costs.

3. Jurisdiction and venue for purposes of this action are conferred by Florida Statutes, Section 559.77 and 15 United States Code, Section 1692k(d).

4. At all material times herein, the conduct of the Defendants, complained of below, occurs in Pinellas County, Florida.

5. At all material times herein, Plaintiffs are individuals residing in Pinellas County, Florida.

6. At all material times herein, Defendant ALAW is a Florida for-profit corporation with its principal place of business located at 208 N. Laura Street, Suite 900, Jacksonville, FL 33202, that, itself and through its subsidiaries, regularly collects debts from consumers in Pinellas County, Florida.

7. At all material times herein, Defendant PNC Bank, National Association (hereinafter, "PNC" or "PNC Bank, N.A.") is a Pennsylvania for-profit national association with its principal place of business located at 300 Fifth Avenue, Pittsburgh, PA 15222, that itself and through its subsidiaries, regularly extends, services, and collects debts from consumers in Pinellas County, Florida.

8. At all material times herein, PNC Bank, N.A. does business under the fictitious name "PNC Mortgage" which is registered with the Florida Department of State, Division of Corporations.

9. At all material times herein, ALAW uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of debts.

10. At all material times herein, ALAW regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

11. At all material times herein, PNC Bank, N.A. is a wholly owned subsidiary, agent, and division of PNC Bankcorp, Inc.; PNC Bankcorp, Inc. is owned by The PNC Financial Services Group, Inc.

12. At all material times herein, Defendant PNC Bank, N.A. acted on its own or through PNC Bankcorp, Inc., The PNC Financial Services Group, Inc., James E. Albertelli, P.A., d/b/a "ALAW," or each.

## FCCPA AND FDCPA STATUTORY STRUCTURE

13. The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

14. The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts. 15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

15. Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

16. For example, the FDCPA prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt, and prohibits a person from communicating directly with a debtor known to be represented by an attorney in an attempt to collect a consumer debt. *See* 15 U.S.C. §§ 1692(d)-(e).

17. Similarly, the FCCPA prohibits a person from collecting consumer debt by communicating with the consumer in a manner that can be expected to harass or abuse the consumer debtor, and also prohibits a person from communicating directly with a consumer when such person knows the consumer is represented by legal counsel with respect to such debt. *See* Fla. Stat. § 559.72(7) and 559.72(18).

## **GENERAL ALLEGATIONS**

18. At all material times herein, PNC is a "creditor" as defined by Florida Statutes, Section 559.55(5).

19. At all material times herein, Plaintiffs are "debtor(s)" or "consumer(s)" as defined by the FCCPA and FDCPA.

20. At all material times herein, ALAW is a "debt collector" as defined by the FCCPA and FDCPA.

21. At all material times herein, Defendants attempted to collect a debt allegedly incurred incident to a mortgage encumbering Plaintiffs' homestead residence (hereinafter, the "Debt").

22. At all material times herein, the Debt is a consumer debt, incurred primarily for personal, household, or family use.

23. At all material times herein, Defendants are each a "person" subject to Florida Statutes, Section 559.72. *See* Fla. Stat. § 559.55(5); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

24. At all material times herein, Defendants' conduct, with respect to the Debt complained of below, qualifies as "communication" as defined by the FCCPA and FDCPA.

25. Specifically, at all material times herein, the Original Payoff Quote (as defined *infra*) was a "claim, attempt, or threat[] to enforce a debt" as defined by Florida Statutes, Section 559.72(9).

26. At all material times herein, the Updated Payoff Quote (as defined *infra*) was a "claim, attempt, or threat[] to enforce a debt" as defined by Florida Statutes, Section 559.72(9).

27. At all material times herein, Defendants acted themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

28. At all material times herein, ALAW acted on behalf of, with the approval of, and with full authority on behalf of, PNC within the scope of ALAW's relationship with PNC.

29. All necessary conditions precedent to the filing of this action occurred or Defendants waived the same.

## FACTUAL ALLEGATIONS

30. On or about December 30, 2014, PNC filed a mortgage foreclosure action against Plaintiffs in the Sixth Judicial Circuit in and for Pinellas County, Florida styled *PNC Bank National Association v. Michael P. Shallenburg, Deborah M. Shallenburg, et al.*, Case Number 15-000043-CI (hereinafter, "Foreclosure Case").

31. The Foreclosure Case concerned the mortgage and promissory note on Plaintiffs' homestead residence located at 769 45th Avenue Northeast, St. Petersburg, Florida 33703 (hereinafter, "The Home").

32. On or about May 18, 2016, ALAW, its affiliate or predecessor in interest, "Albertelli Law" was substituted as counsel for PNC in the Foreclosure Case.

33. On or about January 10, 2018, the state court entered a final judgment of foreclosure (hereinafter, "Final Judgment") against Plaintiffs—in favor of PNC—in the amount of $431,287.28 (hereinafter, "Final Judgment Amount"). Please see a true and correct copy of the Final Judgment attached as, "Exhibit A."

34. The Final Judgment provided for a court sale date of May 10, 2018 (hereinafter, "Court Sale Date"). *Id*.

35. The Final Judgment set the total sum that PNC was entitled to recover against Plaintiffs (i.e., $431,287.28) and also itemized the same into categories of: (1) principal; (2) interest; (3) late charges; (4) costs; (5) property inspections; (6) escrow advance; and (7) attorneys' fees. *Id*.

36. In order to add *any* amounts to the Final Judgment except post-judgment interest, the Final Judgment explicitly required as follows:

> If the Plaintiff incurs additional expenses subsequent to the entry of
> this final judgment but prior to the sale date specified in Paragraph

6, Plaintiff may, by written motion served on all parties and adjudication at a hearing with notice, seek to amend this final judgment to include said additional expenses. *Id.*

37. Prior to the Court Sale Date, Plaintiffs obtained a private contract for the sale of their Home (hereinafter, "Purchase Contract") with a closing date of April 30, 2018 (hereinafter, "Closing").

38. In order to obtain the precise amount required for the Closing—inclusive of the Final Judgment's authorized post-judgment interest of 5.53% per year—Plaintiffs sent a letter to PNC requesting a payoff figure of the loan.

39. On or about March 27, 2018, Plaintiffs—via their authorized third-party title agent—received a response letter dated March 23, 2018 from ALAW that advised that the Final Judgment amount of $431,287.28 had been increased by the following amounts: (1) 84 days of post-judgment interest of $5,310.48; (2) Escrow of $9,383.00; (3) Net Other Fees (Inspections) of $45.00; (4) Recording of $10.00; (5) Corporate Advance of $8,923.76; and (6) Outstanding Attorney Fees and Costs Not Included in Corporate Advances of $200.00. Please see a true and correct copy of Defendant's March 23, 2018 letter attached as "Exhibit B."

40. The sum of all charges plus principal contained in Defendant's March 23, 2018 letter was $455,159.52 (hereinafter, "Original Payoff Quote"). *Id.*

41. In total, the Original Payoff Quote was $23,872.24 higher than the Final Judgment Amount. *See* Exs. A; B.

42. Of the sums added to the Final Judgment Amount by the Payoff Quote, only the 84 days of post-judgment interest at a total of $5,310.48 was authorized pursuant to the Final Judgment. *See* Ex. A.

43. At no time, before or after ALAW provided the Original Payoff Quote, did PNC or ALAW file any motion in the Foreclosure Case to amend the Final Judgment to include the Original Payoff Quote's additional $9,383.00 in "Escrow," $45.00 in "Net Other Fees (Inspections)," $10.00 in "Recording," "$8,923.76 in "Corporate Advance," or the $200.00 in "Outstanding Attorney Fees and Costs Not Included in Corporate Advances" to the Final Judgment.

44. To be clear, ALAW—on behalf of PNC—sent the Original Payoff Quote to Plaintiffs through their third-party title agent (i.e., PNC did not send the Original Payoff Quote to Plaintiffs' legal counsel).

45. On April 5, 2018, counsel for Plaintiffs sent a Notice of Error and Updated Payoff Request to ALAW along with a third-party authorization form. Please see a true and accurate copy of the e-mail transmitting and the Notice of Error attached as "Exhibit C."

46. Plaintiffs' April 5, 2018 letter disputed the unauthorized post-judgment amounts and requested a specific itemization of the alleged "Escrow" and "Corporate Advance" charges. *Id*.

47. On April 6, 2018, ALAW's "REI/PO Dept." sent a reply e-mail advising that additional time would be required to respond because "we do not have the information from our client at this time in order to prepare the letter for you." Please see a true and correct copy of the response attached as "Exhibit D."

48. On April 6, 2018, ALAW's employee Tora Spraggs responded to Plaintiffs' counsel, as to the <u>escrow issue</u> and stated that, "the client [PNC] indicates they've paid an additional $9,383.00 in escrow since entering the final judgment which they are allowed to have

8

recouped on their behalf." Please see a true and correct copy of the April 6, 2018 response attached as "Exhibit E."

49. Also, in the April 6, 2018 response, ALAW's employee Tora Spraggs responded to Plaintiffs' counsel, as to the <u>corporate advances</u> issue and stated that, its client [PNC] showed a total corporate advance of $10,068.76, of which $3,450.00 was included in the Final Judgment Amount. *Id*.

50. Ms. Spraggs continued her explanation by stating that $455.00 represented fees billed on May 3, 2017 and $690.00 represented fees and costs billed on January 11, 2018, both of which were included in the final judgment's "Attorney Fee" line item that totaled $3,450.00. *Id*.

51. In conclusion, Ms. Spraggs reached the remaining corporate advance figure by subtracting the $455.00 and $690.00 (which were allegedly already included in the Final Judgment) from her client's [PNC] total corporate advance of $10,068.76, leaving a remainder of $8,923.76. *Id*.

52. Later on April 6, 2018, Plaintiffs' counsel responded, again disputing both the escrow and corporate advance charges and requesting a conversation concerning the same.

53. On April 9, 2018, ALAW responded, CCing an ALAW attorney in order to arrange a time to speak, and providing figures allegedly showing a flood policy charge incurred prior to the Final Judgment and a hazard policy charge allegedly incurred approximately three months after the Final Judgment. Please see a true and correct copy of the April 9, 2018 response attached as, "Exhibit F."

54. On April 16, 2018, having received no further explanation despite calls, voicemails, and e-mails, Plaintiffs' counsel again reiterated his request to speak with the ALAW's employees about the discrepancies.

9

55. On April 17, 2018, ALAW attorney Chad Sliger responded that he was attempting to resolve the issue with PNC.

56. On or about April 26, 2018, ALAW provided an updated payoff figure (hereinafter, "Updated Payoff Quote") dated April 20, 2018 that contemplated alleged amounts due through and including May 1, 2018. The amount of the Updated Payoff Quote was $457,018.68. Please see a true and correct copy of the Updated Payoff Quote attached as, "Exhibit G."

57. In total, the Updated Payoff Quote was $25,731.40 higher than the Final Judgment Amount. *See* Exs. A; G.

58. Of the sums added to the Final Judgment Amount by the Updated Payoff Quote, only the 112 days of post-judgment interest at a total of $7,080.64 was authorized pursuant to the Final Judgment. *See* Ex. A.

59. Therefore, $18,650.76 of the Updated Payoff Quote was not authorized to be added to the Final Judgment amount without following the specific and explicit procedures required by the Final Judgment and obtaining judicial approval. As used herein, the unauthorized $18,650.76 portion of the alleged Debt is referred to as the "Unauthorized Amounts." Ex. G.

60. At no time, before or after ALAW provided the Updated Payoff Quote, did PNC or ALAW file any motion in the Foreclosure Case to amend the Final Judgment to include the Updated Payoff Quote's additional $9,383.00 in "Escrow," $60.00 in "Net Other Fees (Inspections)," $10.00 in "Recording," "$8,997.76 in "Corporate Advance," or the $200.00 in "Outstanding Attorney Fees and Costs Not Included in Corporate Advances" to the Final Judgment.

61. Plaintiffs, in order to complete the Closing on April 30, 2018, transferred—via wire transfer—$457,018.68 to Defendant ALAW's Trust Account on behalf of PNC.

62. The $457,018.68 wired to the Defendants contemplated full payment of the Updated Payoff Quote of $457,018.68, because Plaintiffs had no other choice but to pay the Unauthorized Amounts or they risked losing the private sale of their home. Please see a true and correct copy of the wire transfer attached as, "Exhibit H."

63. Following the Plaintiffs' payment, ALAW and PNC filed a "Motion to Cancel May 10, 2018 Foreclosure Sale, Vacate Final Judgment, Dismiss Cause of Action and Return Original Note."

64. On May 9, 2018, ALAW and PNC obtained an order vacating the Final Judgment and Dismissing the Case. Please see a true and correct copy of the Order attached as "Exhibit I."

65. At no time did ALAW or PNC petition the state Court to amend the Final Judgment prior to vacation of the judgment and dismissal of the Foreclosure Case.

66. ALAW and/or PNC retain the entire $18,650.76 in Unauthorized Amounts, less the unearned portion of the homeowners' policy premium ($3,125.00) and flood policy premium ($4,882.00), collectively, $8,007.00, that have been refunded to Plaintiffs by the insurance carriers.

67. Plaintiffs retained the undersigned counsel for the purpose of pursuing this matter against Defendants, and Plaintiffs are obligated to pay their attorneys a reasonable fee for their services.

68. As a direct result of Defendants' actions, Plaintiffs suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, confusion, and loss of sleep, believing that Defendants could hold their Closing hostage by charging amounts not authorized by the Final Judgment.

69. In other words, Plaintiffs were left with an unenviable choice, either: 1) lose the sale of their home, risk losing the equity in their home by virtue of a court sale's steeply-reduced

universe of bidders and bid values, and suffer the negative credit reporting consequences of a final judgment for years; or 2) pay the full Updated Payoff Quote figure via their private sale which included nearly $20,000.00 in authorized and unlawful charges.

70. Therefore, as a direct result of Defendants' actions, Plaintiffs were forced to—and did—pay an illegitimate debt in the amount of $18,650.76.

71. Florida Statutes, Section 559.77 provides for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, declaratory and injunctive relief, and an award of attorneys' fees and costs to Plaintiffs, should Plaintiffs prevail in this matter against Defendants.

72. United States Code, Title 15, Section 1692k provides for the award of up to $1,000.00 statutory damages, actual damages, and an award of attorneys' fees, and costs to Plaintiffs, should Plaintiffs prevail in this matter against ALAW.

73. As of the date of this complaint, no final judgment regarding the Unauthorized Amounts has been either obtained by or transferred to Defendants.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)**

Plaintiffs re-allege paragraphs one (1) through seventy-three (73) as if fully restated herein and further state as follows:

74. Defendants are subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the alleged Debt with knowledge that the alleged Debt is not legitimate or asserting the existence of a legal right with the knowledge that the right does not exist.

75. Specifically, Defendants demanded the Unauthorized Amounts portion of the alleged Debt (i.e., $18,650.76) within the Original and Updated Payoff Figures.

76. Although Plaintiffs disputed the Unauthorized Amounts, and although Defendants never exercised any of the judicial avenues explicitly required to legitimize any portion of the Unauthorized Amounts, Defendants nevertheless required payment of all Unauthorized Amounts in order for Plaintiffs to satisfy the Final Judgment.

77. During the course of their successful attempt to collect the Unauthorized Amounts, Defendants knowingly and falsely asserted the Unauthorized Amounts as legitimate and falsely asserted that Defendants possessed the legal right to collect the Unauthorized Amounts from Plaintiffs without following the explicit procedures required by the Final Judgment.

78. Plaintiffs paid all Unauthorized Amounts to Defendants.

79. Defendants did not refund any portion of the Unauthorized Amounts to Plaintiffs prior to the time Plaintiffs originally brought this action.

80. As a direct and proximate result of Defendant's actions, Plaintiffs sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692e and 1692f**

Plaintiffs re-allege paragraphs one (1) through seventy-three (73) as if fully restated herein and further state as follows:

81. Defendant ALAW is subject to, and violated the provisions of, United States Code, Sections 1692e and 1692f by using false, deceptive, and misleading representations in connection with collecting the Debt/Unauthorized Amounts, and by using unfair and unconscionable means to collect the Debt/Unauthorized Amounts.

82. Specifically, Defendants demanded the Unauthorized Amounts portion of the alleged Debt (i.e., $18,650.76) within the Original and Updated Payoff Figures.

83. Although Plaintiffs disputed the Unauthorized Amounts, and although Defendants never exercised any of the judicial avenues explicitly required to legitimize any portion of the Unauthorized Amounts, Defendants nevertheless required payment of all Unauthorized Amounts in order for the Plaintiffs to satisfy the Final Judgment.

84. During the course of its successful attempt to collect the Unauthorized Amounts, ALAW knowingly and falsely asserted the Unauthorized Amounts as legitimate and falsely asserted that the ALAW possessed the right to collect the Unauthorized Amounts from Plaintiffs without following the explicit procedures required by the Final Judgment.

85. Plaintiffs paid all Unauthorized Amounts to ALAW on behalf of PNC.

86. The Defendants did not refund any portion of the Unauthorized Amounts to Plaintiffs prior to the time Plaintiffs originally brought this action.

87. Accordingly, Defendant ALAW violated 15 United States Code, Sections 1692e(2)(A), 1692e(5), 1692e(10), and 1692f(1)

88. As a direct and proximate result of ALAW's actions, Plaintiffs sustained damages as defined by United States Code, Section 1692k.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiffs respectfully request:

    a. Judgment against Defendants declaring that both Defendants violated the FCCPA;

    b. Judgment against both Defendants for maximum statutory damages for violations of the FCCPA;

    c. Judgment prohibiting Defendants from engaging in further conduct in violation of the FCCPA;

d. Judgment against Defendant ALAW for maximum statutory damages for violations of the FDCPA;

e. Actual damages in an amount to be determined at trial;

f. Punitive damages in an amount to be determined at trial;

g. An award of attorneys' fees and costs; and

h. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiffs hereby give notice to Defendants and demand that Defendants and their respective affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully Submitted,

**SWIFT, ISRINGHAUS & DUBBELD, P.A.**

/s/ *Aaron M. Swift*
Jordan T. Isringhaus, Esq., FBN 0091487
**Aaron M. Swift, Esq., FBN 0093088**
Jon. P. Dubbeld, Esq., FBN 0105869
10460 Roosevelt Blvd. N, Suite 313
St. Petersburg, FL 33716
Phone: (813) 563-8466
Fax: (727) 255-5332
jisringhaus@swift-law.com
aswift@swift-law.com
jdubbeld@swift-law.com
*Attorneys for Plaintiffs*