UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBORAH M. SHALLENBURG
and MICHAEL P. SHALLENBURG,

       Plaintiffs,

v.                                      Case No: 8:18-cv-2225-T-36TGW

PNC BANK, N.A., d/b/a PNC
MORTGAGE, and JAMES E.
ALBERTELLI, P.A., d/b/a "ALAW,"

       Defendants.

_____/

## O R D E R

This cause comes before the Court upon Defendant James E. Albertelli, P.A.'s Motion to

Dismiss, (Doc. 57), and Defendant PNC Bank, N.A.'s Motion to Dismiss Amended Complaint

with Prejudice and to Strike Demand for Jury Trial, (Doc. 70). The Court, having considered the

parties' submissions and being fully advised in the premises, will dismiss Plaintiffs' Fair Debt

Collection Practices Act claim, deny PNC Bank, N.A's motion, and grant Plaintiffs leave to file a

second amended complaint.

## I.     BACKGROUND[1]

On or about December 30, 2014, PNC Bank, N.A., d/b/a "PNC Mortgage" ("PNC"), filed

a mortgage foreclosure action against Deborah M. Shallenburg and Michael P. Shallenburg

(collectively, "Plaintiffs") in Florida's Sixth Judicial Circuit, in and for Pinellas County, Florida

(the "Foreclosure Case"). (Doc. 49 ¶30). The Foreclosure Case pertained to the mortgage (the

---

[1] The facts are derived from Plaintiffs' amended complaint (the "Amended Complaint"), (Doc.
11), the allegations of which the Court must accept as true in ruling on the Motion, *see Linder v.
Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am.
Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

"Mortgage") and promissory note on Plaintiffs' homestead residence, which is located at 769 45th Avenue Northeast, St. Petersburg, Florida 33703 (the "Property"). *Id.* at ¶31. During the pendency of the Foreclosure Case, James E. Albertelli, P.A. ("ALAW") was substituted as counsel for PNC. *Id.* at ¶32. On or about January 10, 2018, the state court entered a final judgment of foreclosure in favor of PNC in the amount of $431,287.28 (the "Final Judgment"). *Id.* at ¶33. The Final Judgment itemized its $431,287.28 total by the following categories: (1) principal due on the notice secured by the Mortgage; (2) interest of the note and Mortgage; (3) pre-accelerated late charges; (4) additional costs; (5) property inspections; (6) escrow advance; and (7) attorney's fees. *Id.* at ¶35; (Doc. 49-1 at 2). The Final Judgment directed the Clerk of the Circuit Court to sell the Property by public sale on May 10, 2018, if the Final Judgment's total amount with interest and all costs accrued subsequent to the Final Judgment were not paid. (Docs. 49 ¶34; 49-1 at 2–3).

Prior to the May 10, 2018 court sale date, Plaintiffs obtained a private contract for the sale of the Property, which scheduled the closing for April 30, 2018. (Doc. 49 ¶37). To secure the precise amount required for this closing, including the Final Judgment's 5.53% annual interest rate for post-judgment interest, Plaintiffs sent a letter to PNC, in which they requested a payoff figure for the loan. *Id.* at ¶38.

ALAW, on behalf of PNC, responded to Plaintiffs' request for this amount on or about March 27, 2018, advising Plaintiffs that the Final Judgment's total had increased to $455,159.52 (the "Original Payoff Quote"). *Id.* at ¶¶39–50, 44; (Doc. 49-2 at 1). This increase resulted from: (1) eighty-four days of post-judgment interest in the amount of $5,310.48; (2) "Escrow" in the amount of $9,383.00; (3) "Net Other Fees (Inspections)" in the amount of $45.00; (4) "Recording" in the amount of $10.00; (5) "Corporate Advance" in the amount of $8,923.76; and (6) "Outstanding Attorney's Fees and Costs Not Included in Corporate Advance" in the amount of

$200.00. (Docs. 49 ¶¶39–40; 49-2 at 2). The Original Payoff Quote thus represented a $23,872.24 increase from the Final Judgment's $431,287.28 total. (Doc. 49 ¶41). The Original Payoff Quote's $5,310.48 sum for eighty-four days of post-judgment interest allegedly constituted the only line-item authorized by the Final Judgment. *Id.* at ¶42. Neither PNC nor ALAW filed a motion in the Foreclosure Case to amend the Final Judgment to include the Original Payoff Quote's remaining itemized increases. *Id.* at ¶43.

On April 5, 2018, Plaintiffs' counsel sent a "Notice of Error and Updated Payoff Request" letter to ALAW and PNC, together with a third-party authorization form. *Id.* at ¶45. In addition to disputing the unauthorized post-judgment amounts, this letter requested certain information, including a breakdown of the "Escrow" and "Corporate Advance" amounts owed. *Id.* at ¶46; Doc. 49-3 at 2. The next day, via e-mail, ALAW's "Reinstatement/Payoff" department responded that ALAW lacked sufficient information to "prepare the letter." (Docs. 49 ¶47; 49-4 at 1). Tora Spraggs ("Spraggs"), an ALAW employee, advised Plaintiffs' counsel that escrow was due in the amount of $43,317.96, compared to the Final Judgment's $33,934.96 line-item for escrow, because PNC had indicated that it paid an additional $9,383.00 in escrow that PNC was "allowed to have recouped on [its] behalf" since the entry of the Final Judgment. (Docs. 49 ¶48; 49-5 at 1). As to the $8,923.76 "Corporate Advance" amount listed in the Original Payoff Quote, Spraggs explained that PNC showed a total corporate advance in the amount of $10,068.76, of which $3,450.00 was included in the Final Judgment's $431,287.28 total. (Docs. 49 ¶49; 49-5 at 1). Spraggs further explained that the $8,923.76 "Corporate Advance" amount resulted from subtracting $455.00 and $690.00 from this $10,068.76 total. (Docs. 49 ¶51; 49-5 at 1). According to Spraggs, this $455.00 amount represented fees billed on May 3, 2017, whereas the $690.00 amount represented fees and

costs billed on January 11, 2018. (Docs. 40 ¶50; 49-5 at 1). Both amounts were included in the Final Judgment's "Attorney Fee" line-item, which totaled $3,450.00. (Docs. 40 ¶50; 49-5 at 1).

Plaintiffs' counsel again disputed the "Escrow" and "Corporate Advance" charges and requested a conversation with ALAW regarding such charges. (Doc. 49 ¶52). On April 9, 2018, Spraggs responded to the reiterated objection of Plaintiffs' counsel by providing a flood policy charge incurred prior to the Final Judgment in the amount of $6,258.00 and a hazard insurance policy charge incurred approximately three months after the Final Judgment in the amount of $3,125.00. *Id.* at ¶53; (Doc. 49-6 at 1). After Plaintiffs' counsel reiterated the request to discuss the discrepancies with ALAW's attorneys, an ALAW attorney advised Plaintiffs' counsel that he was attempting to resolve the issue with PNC. (Doc. 49 ¶¶54–55).

On approximately April 26, 2018, ALAW provided an updated loan pay-off amount via letter dated April 20, 2018, which contemplated amounts due through May 1, 2018 (the "Updated Payoff Quote"). *Id.* at ¶56; (Doc. 49-7 at 2). Whereas the Original Payoff Quote had increased the Final Judgment's $431,287.28 total to $455,159.52, the Updated Payoff Quote listed $457,018.68 as the total amount due, which represented a $25,731.40 increase from the Final Judgment's total. (Doc. 49 ¶¶40, 56–57). The Updated Payoff Quote's $7,080.64 total for one-hundred twelve days of post-judgment interest allegedly constituted the only line-item authorized by the Final Judgment; the Final Judgment purportedly did not authorize the remaining $18,650.76 of the $25,731.40 increase (the "Remaining Amount") without following the specific procedures therein and obtaining judicial approval. *Id.* at ¶¶58–59. Neither ALAW nor PNC filed a motion to amend the Final Judgment in the Foreclosure Case to include these other amounts. *Id.* at ¶60.

To complete the closing of the Property on April 30, 2018, Plaintiffs transferred $457,018.68 via wire transfer to ALAW's trust account on behalf of PNC. *Id.* at ¶61. This

$457,018.68 payment contemplated full payment of the Updated Payoff Quote total of the same amount. *Id.* at ¶62. Plaintiffs risked losing the private sale of the Property if they did not pay the Remaining Amount. *Id.* Indeed, Plaintiffs faced a choice: either (1) lose the private sale of the Property, risk losing equity in the Property by virtue of the court sale's reduced universe of bidders and bid values, and suffer negative credit reporting consequences of the Final Judgment for years; or (2) pay the Updated Payoff Quote in full via their private sale, even though the total included the Remaining Amount. *Id.* at ¶69. Thereafter, on ALAW and PNC's motion, the state court cancelled the May 10, 2018 foreclosure sale, vacated the Final Judgment, ordered the Clerk of the Circuit Court to return the original note to Plaintiffs' counsel, and dismissed the Foreclosure Case. *Id.* at ¶¶63–64; (Doc. 49-9 at 1). Neither ALAW nor PNC moved the state court to amend the Final Judgment prior to the court's vacation of the Final Judgment and dismissal of the Foreclosure Case. (Doc. 49 ¶65). ALAW or PNC[2] retain the Remaining Amount, less the $3,125.00 unearned portion of the homeowners' policy premium, and less the $4,882.00 flood policy premium refunded to Plaintiffs by insurance carriers. *Id.* at ¶66. Consequently, ALAW or PNC retain $18,650.76 less $8,007.00, which equals $10,643.76. *See id.*

Plaintiffs' operative complaint contains two counts: (1) one count against ALAW and PNC (collectively, "Defendants") for allegedly violating the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* (the "FCCPA"); and (2) one count against ALAW for allegedly violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a *et seq.* (the "FDCPA"). (Doc. 49 ¶¶74–88). In their FCCPA count, Plaintiffs aver, *inter alia*, that Defendants violated § 559.72(9) "by attempting to collect the alleged [d]ebt with knowledge that the alleged [d]ebt is not legitimate or

---

[2] Plaintiffs specifically allege that "ALAW and/or PNC retain the entire $18,650.76" total of the Remaining Amount. (Doc. 49 ¶66).

asserting the existence of a legal right with the knowledge that the right does not exist." *Id.* at ¶74. Similarly, in their FDCPA count, Plaintiffs aver, *inter alia*, that ALAW violated §§ 1692e and 1692f of the FDCPA by "using false, deceptive, and misleading representations in connection with" its collection of the debt and the Remaining Amount "and by using unfair and unconscionable means to collect" the debt and the Remaining Amount. *Id.* at ¶81.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III.     ANALYSIS

Both ALAW and PNC move to dismiss the Amended Complaint. (Docs. 57, 70). The Court begins with ALAW's motion and will then address PNC's motion.

### A.  ALAW's Motion to Dismiss

In moving for dismissal, ALAW argues that (1) Plaintiffs lacks Article III standing; (2) the Amended Complaint constitutes a shotgun pleading; and (3) Plaintiffs do not sufficiently allege

that ALAW is a "debt collector" under the FDCPA. (Doc. 57 at 5–6). The FDCPA claim is due to be dismissed.

### i. Article III Standing

An inquiry into standing is necessarily a threshold examination. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). United States Supreme Court precedent demonstrates that "the 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, the plaintiff, as the party seeking to invoke federal jurisdiction, must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* At the pleading stage of the litigation, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth*, 422 U.S. at 518).

ALAW challenges Plaintiffs' efforts to establish an injury in fact. (Doc. 57 at 5). "To establish an injury in fact, a plaintiff must demonstrate he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted). Further, "[a] concrete injury must be *de facto*; that is, it must actually exist." *Id.* (internal quotation marks omitted). A concrete injury is an injury that is "real" and not "abstract." *Id.* Yet, "concrete" is not necessarily synonymous with "tangible," as intangible injuries can nevertheless be concrete. *Id.* at 1549. In *Spokeo*, the United States Supreme Court recognized that both history and Congress' judgment play a crucial role in determining whether an intangible harm constitutes an injury in fact. *Id.* "Congress may 'elevat[e] to the status of legally cognizable injuries

concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (alterations in original) (quoting *Lujan*, 504 U.S. at 578). Notably, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement wherever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Indeed, "Article III requires a concrete injury even in the context of a statutory violation." *Id.* As such, an alleged "bare procedural violation, divorced from any concrete harm," cannot "satisfy the injury-in-fact requirement of Article III." *Id.* However, the violation of a procedural right granted by statute may "in some circumstances" be sufficient to constitute injury in fact. *Id.* In such a case, the plaintiff "need not allege any additional harm beyond the one Congress has identified." *Id.* (original emphasis removed).

Plaintiffs sufficiently allege an injury in fact for their FDCPA claim. In *Meyer v. Fay Servicing, LLC*, this Court recognized that § 1692e "creates a right to receive truthful representations of the character and amount of a debt," whereas § 1692f "prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt." 385 F. Supp. 3d 1235, 1241 (M.D. Fla. 2019) (Chappell, J.). A plaintiff who alleges that a defendant deprived him or her of rights under these provisions sufficiently alleges standing, even absent any additional showing of harm. *Id.* (finding that the plaintiff's allegation that the defendant deprived him of the right to information under §§ 1692e and 1692f was "enough to confer standing without any additional showing of harm"). The Court also recently emphasized that courts across the country recognize that §§ 1692e and 1692f provide consumers with substantive rights which "necessarily protect their Congressionally recognized, concrete interests in being free from abusive debt collection practices, and that violations of these statutes' provisions therefore give rise to concrete injuries sufficient to confer Article III standing." *Gause v. Med. Bus. Consultants, Inc.*, No. 8:18-cv-1726-

17AAS, ___ F. Supp. 3d ___, 2019 WL 6716635, at *13 (M.D. Fla. Dec. 12, 2019) (Kovachevich, J.).

Plaintiffs allege that ALAW violated § 1692e of the FDCPA by using "false, deceptive, and misleading representations" in connection with its collection of the debt and the Remaining Amount. (Doc. 49 ¶81). Similarly, Plaintiffs allege that ALAW violated § 1692f of the FDCPA by "using unfair and unconscionable means" in collecting the debt and the Remaining Amount. *Id.* Plaintiffs' allegations extend beyond a mere deprivation of information or violation of their interest in being free from abusive debt collection practices, as they allege that they suffered financial loss. *See*, *e.g.*, *id.* at ¶¶85–86. According to Plaintiffs, they were forced to pay the Remaining Amount— a sum of $18,650.76—or "risk[] losing the private sale" of the Property. *Id.* at ¶62. Indeed, Plaintiffs aver that they were forced to pay this "illegitimate debt," which deprived them of $18,650.76. *Id.* at ¶70. Plaintiffs' allegations plausibly establish that their payment affected them in a personal and individual way because it deprived them of a sum of money. In addition to the alleged financial damages, Plaintiffs claim that they "suffered emotional distress, anxiety, inconvenience, annoyance, fear, confusion and loss of sleep" because they believed that "Defendants could hold their [c]losing hostage by charging amounts not authorized by the Final Judgment." *Id.* at ¶68. For the same reason, the financial loss also constitutes a real and existent injury to Plaintiffs, rather than an abstract injury. As such, the alleged injury is an invasion of a legally protected interest that is both particularized and concrete.[3] Further, the alleged injury is actual, as Plaintiffs allegedly incurred the financial loss, rather than hypothetical.

---

[3] Plaintiffs allege that "ALAW and/or PNC retain the entire $18,650.76" total of the Remaining Amount, (Doc. 49 ¶66), but assert in their response to PNC's motion that PNC "eventually" refunded an amount ambiguously described as "nearly $11,000.00 of the [Remaining Amount]," (Doc. 73 at 6 n.1). This assertion does not alter the Court's conclusion that the alleged injury is particularized and concrete. Even if the Court speculates and construes the vague assertion as

Plaintiffs also allege a claim against Defendants under the FCCPA. The FCCPA authorizes a debtor to bring a lawsuit against any person who, in collecting consumer debts, "claim[s], attempt[s], or threaten[s] to enforce a debt when such person knows that the debt is not legitimate, or assert[s] the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. §§ 559.77(1), 559.72(9). In *Meyer*, the plaintiff alleged that the defendants violated § 559.72(9) of the FCCPA. 385 F. Supp. 3d at 1242–43. The Court held that Plaintiff had alleged standing under the FCCPA. *Id.* at 1241. To reach this conclusion, the Court recognized that "[t]he FCCPA permits statutory damages and, therefore, a plaintiff 'is not required to prove actual damages, but only a violation of one of the prohibited practices in the FCCPA.'" *Id.* (internal quotation marks omitted) (quoting *Laughlin v. Household Bank, Ltd.*, 969 So.2d 509, 513 (Fla. 1st DCA 2007)). Consequently, the Court recognized that the plaintiff's allegation that the defendant deprived him of his statutory right to receive information sufficiently stated a concrete injury under the FCCPA. *Id.*

Like *Meyer*, Plaintiffs allege that Defendants violated § 559.72(9), contending that Defendants demanded the Remaining Amount in the Updated Payoff Quote and the unauthorized amounts in the Original Payoff Quote while knowingly and falsely representing the Remaining Amount as legitimate and falsely asserting that they possessed the legal right to collect the Remaining Amount from Plaintiffs without following the explicit procedures required by the Final Judgment. (Doc. 49 ¶¶75, 77). Plaintiffs' allegations extend beyond the plaintiff's allegations in *Meyer*, as Plaintiffs allege financial loss, in additional to emotional distress, anxiety, loss of sleep,

_____

stating that Plaintiffs recouped the financial losses incurred as a result of the alleged misconduct, Plaintiffs have alleged violations of statutes conferring substantive rights which "necessarily protect [consumers'] Congressionally recognized, concrete interests in being free from abusive debt collection practices." *Gause*, 2019 WL 6716635, at *13.

and other symptoms. For the same reasons as above, Plaintiffs' alleged injury is an invasion of a legally protected interest that is concrete and particularized and an actual injury. Consequently, Plaintiffs sufficiently allege an injury in fact for the FCCPA claim.

Therefore, Plaintiffs have standing because they sufficiently allege that they suffered an injury in fact and they allege sufficient facts as to the remaining elements of the standing inquiry. Accordingly, ALAW's motion to dismiss is denied on this ground.

### ii. Shotgun Pleading

Over the course of four sentences, inclusive of legal citations, ALAW also attacks the Amended Complaint as a shotgun pleading. (Doc. 57 at 5–6). This argument is unavailing.

In *Weiland v. Palm Beach County Sheriff's Office*, the Eleventh Circuit identified four types of shotgun complaints:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint . . . replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

792 F.3d 1313, 1321–23 (11th Cir. 2015) (internal footnotes omitted).

For those cases with multiple defendants, "the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient to permit the defendant, or the Court, to ascertain exactly what [the] plaintiff is claiming." *J.V. by K.V. v. Duval Cnty. Sch. Bd.*, No. 3:16-cv-1009-J-34MCR, 2017 WL 4226590, at *1 (M.D. Fla. Sept. 22, 2017) (Howard, J.) (citing *W. Coast Roofing & Waterproofing,*

*Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (per curiam)). "[T]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

In light of ALAW's sole citation to *Brogan v. Volusia County, Florida*, No. 6:17-cv-745-Orl-40KRS, 2018 WL 2359145, at *3 (M.D. Fla. May 24, 2018) (Byron, J.), and its failure to provide any accompanying analysis of the Amended Complaint, the Court construes this section of ALAW's motion as contending that the Amended Complaint lacks specific allegations as to each of Defendants and improperly lumps Defendants together. (Doc. 57 at 5–6). In *Brogan*, the operative complaint included twenty-six counts against twenty defendants over the course of four-hundred twenty-eight paragraphs that spanned eighty-seven pages. *Brogan*, 2018 WL 2359145, at *3. In analyzing the complaint, the Court characterized the plaintiff's "kitchen-sink pleading" as "replete with vague, conclusory, and repetitive allegations," which often failed to distinguish among the defendants. *Id.* This Court further recognized the lack of specific factual allegations as to each defendant, despite the complaint's indiscriminate allegations that each of the defendants knew the circumstances leading to the wrongful conduct. *Id.* This Court dismissed the operative complaint without prejudice as a shotgun complaint, recognizing that this deficient pleading style precluded the Court from discerning which facts pertained to which defendant and failed to apprise the defendants of the grounds upon which each claim rested. *Id.*

Here, unlike the twenty-six counts against twenty defendants over the course of eighty-seven pages in *Brogan*, the Amended Complaint names two defendants and sets forth two counts

over the course of fifteen pages. Plaintiffs bring the FDCPA claim solely against ALAW[4] and the FCCPA claim against each of Defendants. *See*, *e.g.*, (Doc. 49 ¶¶71–72, 80, 87–88). Although Plaintiffs refer to Defendants collectively in Count I, *see*, *e.g.*, *id.* at ¶74, *Weiland* does not "prohibit all instances where a count lodges a claim against multiple defendants, but rather only where such a claim fails to provide Defendants with adequate notice of the claims against them," *Continental 322 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1140 (M.D. Fla. 2018) (Chappell, J.). Courts have approved of claims lodged against multiple defendants "where the activities undertaken by each defendant were alleged." *Id.* Although Plaintiffs bring the FCCPA claim against Defendants and refer to Defendants collectively thereunder, the Amended Complaint sufficiently describes the activities undertaken by each of the Defendants. For example, Plaintiffs detail PNC's filing of the Foreclosure Case and PNC's alleged failure to amend the Final Judgment before the Original Payoff Quote, the Updated Payoff Quote, or the state court's dismissal of the Foreclosure Case. (Doc. 49 ¶¶43, 60). Plaintiffs repeatedly emphasize that ALAW acted on PNC's behalf and with PNC's approval. *Id.* at ¶28. Plaintiffs detail ALAW's conduct, such as their contention that ALAW sent the Original Payoff Quote to Plaintiffs on PNC's behalf and their allegation that Spraggs explained the "Escrow" and "Corporate Advance" amounts to Plaintiffs' counsel upon his objection. *Id.* at ¶¶44, 49. The Amended Complaint contains factual allegations with respect to each of Defendants, which provide Defendants with sufficient notice of the claims against them and the grounds upon which each claim rests. ALAW's shotgun pleading argument accordingly fails. Of course, whether Plaintiffs predicate their FDCPA and FCCPA claims upon

---

[4] While a few of the allegations under the FDCPA claim refer to "Defendants," the remaining allegations under the FDCPA claim make clear that Plaintiffs lodge the claim against ALAW only and clear up any confusion caused by these haphazard allegations. *See*, *e.g.*, (Doc. 49 ¶¶81, 87–88).

sufficient *factual content* to state a claim is a separate inquiry, and the Federal Rules of Civil Procedure provide Defendants with the mechanism—a Rule 12(b)(6) motion—to move to dismiss a claim predicated upon insufficient factual content.

### iii. ALAW as a "Debt Collector" Under the FDCPA

In its final attack, ALAW argues that Plaintiffs do not sufficiently allege that ALAW constitutes a "debt collector" under the FDCPA.[5] (Doc. 57 at 6). ALAW contends that Plaintiffs' only allegation regarding ALAW's possible status as a "debt collector" is their conclusory allegation that ALAW constitutes a "debt collector" under the FDCPA, which is otherwise unsupported with any factual allegations. *Id.* Upon review, the Court agrees that Plaintiffs fail to sufficiently allege that ALAW constitutes a "debt collector" under the FDCPA.

In passing the FDCPA, Congress sought to protect consumers from "abusive debt collection practices by debt collectors . . . [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged . . . ." 15 U.S.C. § 1692(e). As the United States Supreme Court recently reiterated, the FDCPA pursues these purposes by "imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices." *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019). Unsurprisingly, then, the requirements of the FDCPA apply "only to professional debt-collectors." *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 n.3 (11th Cir. 2014).

A "debt collector" under the FDCPA is a term of art. *Correa v. BAC Home Loans Servicing LP*, No. 6:11-cv-1197-Orl-22DAB, 2012 WL 1176701, at *11 (M.D. Fla. Apr. 9, 2012) (Conway,

---

[5] ALAW also vaguely asserts that (1) whether either payoff quote included improper amounts is immaterial because the Final Judgment's entry "does not stop additional fees that need to be paid" by Plaintiffs; and (2) "Plaintiffs are improperly attempting to turn an affirmative defense into an affirmative cause of action." (Doc. 57 at 1, 4). These statements are unclear and unsupported by legal argument or further factual development. Accordingly, and in light of the Court's analysis herein, the Court declines to address these undeveloped contentions.

J.). The FDCPA defines "debt collector," as "any person [(1)] who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [(2)] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[6] 15 U.S.C. § 1692a(6). The FDCPA also enumerates exclusions from this definition. *Id.*

Plaintiffs allege that ALAW violated §§ 1692e and 1692f of the FDCPA.[7] Section 1692e makes it unlawful for a "debt collector" to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692f similarly proscribes a "debt collector" from using "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f. For Plaintiffs' FDCPA claim to survive dismissal at this stage of the litigation, Plaintiffs must plausibly allege sufficient factual content to allow the Court to draw a reasonable inference that ALAW constitutes a "debt collector" under the FDCPA. *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678); *Kurtzman v. Nationstar Mortg. LLC*, 709 F. App'x 655, 659 (11th Cir. 2017) (per curiam)). A plaintiff's mere assertion that a defendant constitutes a "debt collector" under the FDCPA in the absence of further allegations supporting the proposition that the defendant either operates a business that has a principal purpose of collecting debts, or regularly attempts to collect the debts of another, fails to plausibly allege that such defendant constitutes a "debt collector." *Farguharson v. Citibank, N.A.*, 664 F. App'x 793, 799–800 (11th Cir. 2016) (per curiam). Accordingly, as

---

[6] The FDCPA also defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests" for the purpose of 15 U.S.C. § 1692f(6), an unfair practices subsection of the FDCPA. 15 U.S.C. § 1692a(6). Plaintiffs do not allege that ALAW violated § 1692f(6).

[7] Plaintiffs specifically allege that ALAW violated §§ 1692e(2)(A), 1692e(5), 1692e(10), and 1692f(1). (Doc. 49 ¶87).

Plaintiffs bring an FDCPA claim against ALAW, the law requires Plaintiffs to plausibly allege sufficient factual content to allow the Court to draw a reasonable inference that ALAW constitutes a "debt collector" under the FDCPA.

Plaintiffs contend that, at all material times alleged in the Amended Complaint, ALAW constituted a "debt collector as defined by" the FDCPA. (Doc. 49 ¶20). Plaintiffs further aver that, "[a]t all material times alleged herein, ALAW uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of debts." *Id.* at ¶9. Plaintiffs also allege that, "[a]t all material times herein, ALAW regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* at ¶10. As should be obvious, these latter allegations are nearly verbatim quotations of the "debt collector" definition under § 1692a(6). In seeking to allege that ALAW qualifies as a "debt collector" under the first provision of the FDCPA's definition for the term, Plaintiffs merely add "[a]t all material times herein" and slightly alter the definition by amending "any instrumentality" to "instrumentalities," "any business" to "a business" and "any debts" to just "debts." Plaintiffs' effort to allege that ALAW qualifies as a "debt collector" under the second provision of the FDCPA's definition for the term reveals even more resemblance to the definition, as Plaintiffs simply add "[a]t all material times herein" before proceeding to recite the second provision of the definition verbatim.

However, a plaintiff who quotes the FDCPA's "debt collector" definition and states that a defendant qualifies as a "debt collector" does not sufficiently allege that a defendant qualifies as a "debt collector." *Barber v. Rubin Lublin, LLC*, No. 1:13-cv-975-TWT, 2013 WL 6795158, at *9 (N.D. Ga. Dec. 20, 2013); *cf. Correa*, 2012 WL 1176701, at *12–14 (finding that the plaintiff had failed to sufficiently allege that the defendants were debt collectors where he simply cited to "debt

collector" definition and alleged in a conclusory manner that the defendants qualified as debt collectors). In *Barber*, the plaintiff's complaint alleged twice that the defendant was a "debt collector." 2013 WL 6795158, at *9. First, the plaintiff quoted the "debt collector" definition and stated that the defendant qualified as a "debt collector." *Id.* The court explained that this assertion constituted a legal conclusion and was void of any factual content. *Id.* Second, the plaintiff referred to the notice that he received from the defendant and asserted again that the defendant qualified as a "debt collector" by quoting the statutory definition. *Id.* However, the court found this allegation to be insufficient because it prohibited the court from reasonably inferring that the defendant operated a business, the principal purpose of which was collecting debts on the basis of the sole collection alleged in the operative complaint. *Id.* In concluding that the plaintiff had failed to sufficiently plead that the defendant constituted a "debt collector," the court emphasized that the plaintiff had not provided sufficient factual content to enable the court to reasonably infer that defendant qualified as a "debt collector" under either definition of the term. *Id.* (citing *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1218 (11th Cir. 2012)).

Here, Plaintiffs' conclusory allegation that ALAW is a "debt collector" under the FDCPA and separate regurgitation of the "debt collector" definition are insufficient to enable the Court to reasonably infer that ALAW is a "debt collector." These allegations are devoid of factual content and simply parrot the statutory definition. As emphasized above, the question is whether Plaintiffs alleged sufficient *factual* content to enable the Court to reasonably infer that ALAW either "[(1)] uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [(2)] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

In addition to the allegations cited above, Plaintiffs point to other allegations in an effort to show that they plausibly allege that ALAW is a "debt collector." Plaintiffs allege that ALAW "itself and through its subsidiaries, regularly extends, services, and collects debts from consumers in Pinellas County, Florida." (Doc. 49 ¶8). Plaintiffs also allege that "[a]t all material times herein, ALAW acted on behalf of, with the approval of, and with full authority on behalf of, PNC within the scope of ALAW's relationship with PNC." *Id.* at ¶28. Plaintiffs also point out their reference to, and attachment of, the Final Judgment, their allegation that ALAW was substituted as counsel for PNC, and the Final Judgment as showing that PNC held a lien for the total sum. (Doc. 61 at 11). But, even assuming the truth of these allegations and viewing them collectively with the allegations mentioned above simply does not allow the Court to reasonably infer that ALAW utilized an instrumentality of interstate commerce or the mails in a business of which collecting debts served as the *principal purpose*, regardless of ALAW's collection of "debts from consumers," PNC's lien, and any action by ALAW on behalf of PNC. Rather, such allegations may be construed to supply the inference that debt collection serves as *some* of ALAW's business, but not that debt collection serves as the "principal purpose" of ALAW's business. *See Davidson*, 797 F.3d at 1317 (finding that the complaint provided a basis for the court to plausibly infer that debt collection constituted some of the defendant's business, but it failed to provide any basis for the court to infer that debt collection served as the "principal purpose" of the defendant's business).

Nor do the allegations enable the Court to reasonably infer that ALAW *regularly* collects, directly or indirectly, debts that are owed or due or claimed to be owed or due *another*. Even assuming the veracity of the allegations and assuming that ALAW's activity on behalf of PNC in the instant action qualifies as the collection of, or an attempt to collect, debts owed or asserted to be or due another, there is no indication of the extent to which ALAW regularly collects or attempts

to collect "debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Indeed, aside from the legal conclusions offered above, Plaintiffs' only additional allegation relevant to the second definition under § 1692a(6) is their assertion that ALAW "itself and through its subsidiaries, regularly extends, serves, and collects debts *from consumers* in Pinellas County, Florida." (Doc. 49 ¶8) (emphasis added). Yet, even when assuming the truth of this allegation, there is no indication whether ALAW's allegedly regular extension, servicing, and collection of debts from consumers, at least some portion of which is also accomplished through subsidiaries, constitutes ALAW's regular collection of its own debts or debts of others.

A person must regularly collect or attempt to collect debts for others to qualify as a "debt collector" under the FDCPA's second definition for the term. *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1724 (2017) (emphasizing that "the [FDCPA] defines debt collectors [under its second definition] to include those who regularly seek to collect debts 'owed . . . another' and "you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector" under the second definition of the term); *Davidson*, 797 F.3d at 1316 ("[A] person must regularly collect or attempt to collect debts *for others* in order to qualify as a 'debt collector' under the second definition of the term."); *McFadden v. U.S. Bank, N.A.*, No. 8:14-cv-2068-T-35MAP, 2015 WL 10352994, at *5 (M.D. Fla. Oct. 7, 2015) (Scriven, J.) (framing the inquiry as whether the defendant-bank regularly collected on debts owed or due another at the time of collection, per *Davidson*, and finding that the plaintiff had failed to sufficiently allege that the defendant-bank constituted a "debt collector" because the subject debt was owed to the defendant at the time of its collection, not another).

A quest for other allegations providing sufficient factual content to allow the Court to reasonably infer that ALAW meets the "debt collector" definition proves unavailing and does not

alter this conclusion.[8] The law does not demand "detailed factual allegations" at this early stage of the litigation, *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted), but it does demand "factual content that allows the court to draw the reasonable inference" that ALAW is a "debt collector" under the FDCPA, *Davidson*, 797 F.3d at 1313 (internal quotation marks omitted). While close, the requisite factual content is absent here.[9] Thus, Plaintiffs fail to sufficiently allege that ALAW constitutes a "debt collector" under the FDCPA. Plaintiffs' FDCPA claim against ALAW is therefore due to be dismissed. However, because the underlying facts and circumstances relied on by Plaintiffs may present a proper subject of relief, the Court will provide Plaintiffs with leave to amend this count. *Dysart v. BankTrust*, 516 F. App'x 861, 865 (11th Cir. 2013) (per curiam). Accordingly, the dismissal shall be without prejudice, to Plaintiffs' right to file a second amended complaint.

---

[8] Plaintiffs attach the Original Payoff Quote and the Updated Payoff Quote to the Amended Complaint. (Docs. 49-2, 49-7). The Court generally must limit itself to a consideration of the pleadings and exhibits attached thereto on a Rule 12(b)(6) motion. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam). Each attached letter states that ALAW "may be considered a debt collector" and states that the letter is an "attempt to collect a debt," (Docs. 49-2, 49-7) (emphasis removed), but a letter that identifies an entity as a "debt collector" does not "transform" such entity into a "debt collector" under the FDCPA at the pleading stage, *Fenello v. Bank of Am., N.A.*, 577 F. App'x 899, 902 (11th Cir. 2014) (per curiam) (rejecting the plaintiffs' argument on appeal that the district court erred in dismissing the plaintiffs' FDCPA claim by concluding that the defendant was not a "debt collector" because the correspondence that the plaintiffs received from the defendant identified the defendant as a "debt collector" under the FDCPA). As such, even when viewed collectively with the other allegations, the Court is not left with the reasonable inference that ALAW is a "debt collector" under the FDCPA.

[9] By comparison, in *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, the Eleventh Circuit held that the plaintiffs had sufficiently alleged that the defendant-law firm constituted a "debt collector" under the second provision of the definition where the complaint alleged that "the law firm is 'engaged in the business of collecting debts owed to others incurred for personal, family[,] or household purposes' and that, in the year prior to the complaint's filing, "the firm had sent to more than 500 people 'dunning notice[s]' containing 'the same or substantially similar language' to that found in the letter and documents attached to the complaint" 678 F.3d at 1218–1219 (alterations in original).

### B. PNC's Motion to Dismiss

PNC argues that the Court must dismiss the Amended Complaint with prejudice because (1) the Mortgage, the Final Judgment, and Florida law entitle PNC to collect the additional sums post-judgment; and (2) Plaintiffs fail to allege that PNC had actual knowledge that the sought amounts were illegitimate, and Plaintiffs further fail to plead any facts supporting such actual knowledge on behalf of PNC. (Doc. 70 at 8–15). PNC alternatively moves to strike Plaintiffs' jury trial demand. *Id.* at 2, 15–22.

#### i. PNC's Ability to Collect Additional Post-Judgment Sums Under the Mortgage, Final Judgment, and Florida Law

PNC first argues that the Court must dismiss the Amended Complaint because the Mortgage, the Final Judgment, and Florida law permitted PNC to collect additional sums post-judgment. (Doc. 70 at 8–14). This argument thus casts doubt on the alleged illegitimacy of the debt or the assertion of such a purportedly nonexistent legal right in the collection of the debt under Florida Statutes § 559.72(9). This argument is unavailing.

#### 1. The Final Judgment

The Court begins by examining PNC's argument that the Final Judgment permitted the collection of additional sums post-judgment. A brief review of Plaintiff's FCCPA claim against PNC is warranted. Plaintiffs' sole claim against PNC is grounded in Florida Statutes § 559.72(9). (Doc. 59 ¶74). This subsection of the FCCPA provides that, "[i]n collecting consumer debts, no person shall . . . [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."[10] Fla. Stat. § 559.72(9). Further, the FCCPA defines "debt" or

---

[10] Thus, the statute focuses on the actions of "person[s]," rather than the actions of debt collectors. *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1372 (S.D. Fla. 2011); *see Schauer v. Gen. Motors Acceptance Corp.*, 819 So.2d 809, 811–12 (Fla. 4th DCA 2002) (stating that the FCCPA

"consumer debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

Plaintiffs allege that the Updated Payoff Quote constituted a "claim, attempt, or threat[] to enforce a debt" under § 559.72(9).[11] (Doc. 49 ¶26). Plaintiffs cite Paragraph 8 of the Final Judgment to allege that the Final Judgment "explicitly required" PNC to follow certain procedures "to add any amounts to the Final Judgment except post-judgment interest." *Id.* at ¶36 (original emphasis removed). Plaintiffs attach the Final Judgment to the Amended Complaint. (Doc. 49-1). Paragraph 8 of the Final Judgment provides:

> If the Plaintiff incurs additional expenses subsequent to the entry of this final judgment but prior to the sale date specified in Paragraph 6, Plaintiff may, by written notice served on all parties and adjudication at a hearing with notice, seek to amend this final judgment to include said additional expenses.

*Id.* at 4.

---

"seeks in part to protect in-state consumers from the illegal and/or unscrupulous practices of debt collectors and other persons"). PNC does not challenge the applicability of such language, but instead argues, *inter alia*, that it was entitled to collect post-judgment sums. (Doc. 70 at 8–14).

[11] Plaintiffs also allege that the Original Payoff Quote constituted a "claim, attempt, or threat[] to enforce a debt" under § 559.72(9). (Doc. 49 ¶25). However, Plaintiffs' claim against Defendants for violation of § 559.72(9) states that, "[s]pecifically, Defendant demanded the [Remaining Amount] portion of the alleged Debt (i.e., $18,850.76) within the Original and Updated Payoff [Quotes]." *Id.* at ¶75. Significantly, $18,850.76 constituted the total of the Remaining Amount, as provided in the Updated Payoff Quote, whereas $18,561.76 constituted the total for the allegedly unauthorized amounts in the Original Payoff Quote. *See id.* at ¶39. The FCCPA claim against PNC also consistently references the "Unauthorized Amounts," which the Amended Complaint defines as the unauthorized $18,650.76 included in the Updated Payoff (defined as "Remaining Amount" in this Order). *Id.* at ¶59. Accordingly, the Court construes Plaintiffs' FCCPA claim as pertaining to the Updated Payoff Quote and the Remaining Amount. To the extent that Plaintiffs intend for their FCCPA claim to include the Original Payoff Quote, they may desire to clarify their allegations upon amendment.

Plaintiffs contend the Remaining Amount "was not authorized to be added to the Final Judgment amount without following the specific and explicit procedures required by the Final Judgment and obtaining judicial approval." (Doc. 49 ¶59). Relying on the language of Paragraph 8, Plaintiffs allege that neither of Defendants filed a motion in the Foreclosure Case to amend the Final Judgment to include the Updated Payoff Quote's additional (1) $9,383.00 for "Escrow"; (2) $45.00 for "Net Other Fees (Inspections)"; (3) $10.00 for "Recording"; (4) $8,923.76 for "Corporate Advance"; and (5) $200.00 for "Outstanding Attorney's Fees and Costs Not Included in Corporate Advance." *Id.* at ¶60. Plaintiffs allege that they suffered emotional distress, anxiety, and fear, among other symptoms, by believing that "Defendants could hold their [c]losing hostage by charging amounts not authorized by the Final Judgment." *Id.* at ¶68.

The Final Judgment provided $431,287.28 as the amount due and owed to PNC. (Doc. 49-1 at 2). This total amount incurred interest "at the prevailing statutory interest rate of 5.53 percent per year from this date [of the Final Judgment] through December 31 of this current year." *Id.* As such, Plaintiffs contend that the line-item for post judgment interest in the Updated Payoff Quote constituted the only "authorized" amount "pursuant to the Final Judgment." (Doc. 49 ¶58).

But, PNC argues that the Final Judgment "provides for and/or contemplates PNC's recovery of additional sums." (Doc. 70 at 12). The Final Judgment clearly contemplates the accrual of certain costs subsequent to the Final Judgment, as it directs the Clerk of Circuit Court to sell the Property on May 10, 2018, "[i]f the total sum with interest at the [5.53% interest rate] and all costs accrued subsequent to this judgment are not paid." (Doc. 49-1 at 3). PNC contends that Paragraph 8 merely provides a "permissive mechanism" by which PNC could have sought to amend the Final Judgment before the scheduled foreclosure sale. (Doc. 70 at 12). Under PNC's interpretation of Paragraph 8, PNC could have elected to move to amend the Final Judgment to include its additional

incurred expenses following the entry of the Final Judgment, but it was not required to move, even if it sought the collection of these expenses.

Plaintiffs allege that PNC was not authorized to add the Remaining Amount to the Final Judgment without following the procedures set forth in the Final Judgment and obtaining judicial approval. While "may" constitutes permissive language, a competing interpretation of Paragraph 8 is that its language provides *the* mechanism for PNC to collect any additional expenses incurred after the Final Judgment, rather than providing PNC with one possible avenue for collecting such additional expenses, which PNC could elect to utilize in its discretion. The Court also notes that the Final Judgement requires PNC to advance all "subsequent required costs" and states that reimbursement or credit for PNC's such costs must be "by court order based upon a written motion and adjudication at a hearing with notice," except for the Clerk fee and certain publishing costs. (Doc. 49-1 at 3). The Court presently must accept Plaintiffs' allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As such, accepting Plaintiffs' allegations as true and in light of this analysis, PNC's interpretation of Paragraph 8 of the Final Judgment does not defeat the plausibility of Plaintiffs' FCCPA claim against PNC at this stage of the litigation.

### 2. The Mortgage

PNC also asserts that the Mortgage authorizes PNC to recover additional costs. *Id.* at 11. In support, PNC attaches the Mortgage and accompanying Loan Modification Agreement to the motion. (Docs. 70-1, 70-2). PNC relies on the language of the Mortgage. (Doc. 70 at 9–11). Notably, Plaintiffs did not attach these documents to the Amended Complaint. "[A] court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see Brooks v. Blue Cross &*

*Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]hen the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.") "A document is central to a complaint when it is a 'necessary part of [the plaintiff's] effort to make out a claim." *Madura v. Bank of Am., N.A.*, 767 F. App'x 868, 870 (11th Cir. 2019) (per curiam) (alteration in original) (quoting *Day*, 400 F.3d at 1276). "In this context, 'undisputed' means the authenticity of the document is not challenged." *Day*, 400 F.3d at 1276. Additionally, under Rule 201(b) of the Federal Rules of Evidence, judicial notice of an adjudicative fact is appropriate when such fact (1) is generally known within the court's territorial jurisdiction; or (2) is capable of being accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The Eleventh Circuit has cautioned that "the taking of judicial notice of facts is, as a matter of evidence law, a highly limited process." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997).

To the extent that PNC requests the Court to consider the Mortgage and the accompanying Loan Modification Agreement, the Court denies such request. Although PNC attaches these documents to the motion, the motion is devoid of any argument as to why such consideration is appropriate. PNC instead merely recites caselaw regarding a court's ability to consider certain documents. Although PNC argues that the Court may consider "the documents before the Court" in ruling on its motion, it fails to articulate the basis for such consideration. (Doc. 70 at 3). PNC does not provide any argument as to why the Mortgage or Loan Modification Agreement are central to Plaintiffs' claim or otherwise a "necessary part" of Plaintiffs' effort to bring the FCCPA

claim. *Madura*, 767 F. App'x at 870 (internal quotations omitted). Similarly, to the extent that PNC requests the Court to take judicial notice of the documents, the motion lacks any supporting argument. In the context of discussing the Mortgage's purported jury trial waiver, PNC includes a footnote containing general judicial notice principles, but no argument for the applicability of these principles. (Doc. 70 at 4). PNC does not specify whether it requests the Court to take judicial notice of the entirety of the Mortgage or Loan Modification Agreement, or specific provisions of such documents.

The Court's concerns regarding the authenticity of these documents further compounds its reluctance to consider, or take judicial notice of, these documents. While the Court is mindful that it may consider publicly filed documents upon consideration of a Rule 12(b)(6) motion, *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015), and the Mortgage and Loan Modification Agreement indicate that the were filed with the Pinellas County Clerk of the Circuit Court and Comptroller on May 18, 2005, and June 30, 2014, respectively, each document is an unofficial copy, (Docs. 70-1 at 1; 70-2 at 1). Furthermore, although Plaintiffs do not explicitly address the authenticity of the documents in responding to the motion to dismiss, PNC has not provided any testimony, either through an affidavit or otherwise, claiming that the documents are authentic. *See Harrington v. RoundPoint Mortg. Servicing Corp.*, No. 2:15-cv-322-FtM-38MRM, 2015 WL 5155003, at *2 (M.D. Fla. Sept. 1, 2015) (Chappell, J.) (declining to judicially notice a mortgage provided in support of a motion to strike a jury demand where the plaintiff had not admitted the authenticity of the mortgage and the defendant, in seeking to strike the jury demand, failed to provide any testimony averring that the mortgage was authentic or a certified copy of the mortgage). These circumstances raise concerns regarding the accuracy of the documents. As such,

the Court declines to consider, or take judicial notice of, the Mortgage and the Loan Modification Agreement.

PNC cites to, or quotes, provisions of the Mortgage to support its argument that the Mortgage permitted PNC to recover additional costs. For example, citing to Paragraph 1 of the Mortgage, PNC asserts that "Plaintiffs agreed to pay the principal and interest when due, in addition to any prepayment charges, late charges, and escrow funds as applicable." (Doc. 70 at 11). By way of another example, PNC quotes Paragraph 9 of the Mortgage, which purportedly "authorizes the Lender to 'do and pay for whatever is reasonable or appropriate to protect [the] Lender's interest in the Property and rights under this Security Instrument.'" *Id.* In light of PNC's failure to justify its construed request for consideration or judicial notice of the Mortgage, such quoted or cited provisions are supplied without context or definitions. As a result, the Court must speculate as to the meaning of certain terms, whether PNC provides the entire paragraph, whether PNC accurately summarizes the language, and the interplay between the Mortgage's paragraphs. The Court accordingly declines to delve into the interpretation of the Mortgage at this early stage of the litigation.

PNC relies heavily on *Holliston v. Florida Default Law Group, P.A.*, No. 8:07-cv-336-T-26EAJ, 2008 WL 8946060 (M.D. Fla. Mar. 13, 2008) (Lazzara, J.), in making this argument, as well. In *Holliston*, the defendant had filed a residential foreclosure action on behalf of its client, Chase Home Finance, LLC. *Id.* at *1. After the plaintiff requested quotes to reinstate his home loan and pay off applicable costs and fees for the purpose of halting the foreclosure action, the defendant forwarded payoff and reinstatement letters to the plaintiff's agents. *Id.* at *2-3. The quotes reflected the plaintiff's payments to Chase during his Chapter 13 bankruptcies, which occurred during the foreclosure action, and included post-judgment advances made by Chase to

protect certain collateral. *Id.* at *3. The plaintiff wired the amount to pay off the entirety of the note and subsequently filed a lawsuit against the defendant, which alleged claims under the FDCPA and the FCCPA. *Id.* at *1, 4. The plaintiff did not contest the stated amounts, but instead asserted that the defendant did not have a legal right to collect amounts that were not included in the summary final judgment of foreclosure. *Id.* at *4. In conducting its analysis, the Court examined the note and the mortgage. *Id.* at *6. For example, the Court noted that the plaintiff had agreed, per the Mortgage's terms, to pay all escrow items for assessments and taxes, premiums for all required insurance, and mortgage insurance. *Id.* However, the critical distinction between *Holliston* and the instant action is the procedural posture: the Court in *Holliston* examined the mortgage's terms upon ruling on the parties' cross-motions for summary judgment, whereas PNC now asks the Court to dismiss Plaintiffs' FCCPA claim with prejudice on the basis of selected language from the Mortgage. The Court is unpersuaded. For the reasons stated above, and in absence of any argument advanced by PNC regarding the propriety of analyzing the Mortgage's language to evaluate Plaintiffs' claims at this stage of the litigation, the Court declines to rely on the provided language from the Mortgage to dismiss Plaintiffs' FCCPA claim.

### 3. Remaining Arguments

PNC concludes by making a series of unpersuasive arguments to argue for the dismissal of the FCCPA claim. (Doc. 70 at 12–14). First, Plaintiff argues that, contrary to Plaintiffs' allegations that they were forced to pay the Remaining Amount, the "record demonstrates otherwise." *Id.* at 13. PNC points to Plaintiffs' initial complaint, in which Plaintiffs brought the FCCPA claim against PNC Bank Financial Services Group, Inc., and the exhibits thereto to claim that Plaintiffs could have accepted PNC's offer of $450,700, as conveyed by ALAW, which constituted $6,318.68 less than what Plaintiffs paid to avoid the foreclosure sale. *Id.* at 13 (citing (Doc. 2-1 at

51–52)). "A district court ruling on a motion to dismiss is not required to disregard documents that the plaintiff himself filed with his original complaint." *Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009) (per curiam) (holding that the district court did not consider any materials outside of the pleadings in ruling on a motion to dismiss when it considered documents that the plaintiff had attached to his original complaint).

Even if the Court considers the cited exhibit from the original complaint, Plaintiffs' rejection of PNC's offer does not render Plaintiffs' claim implausible.[12] The Court reiterates that it must accept Plaintiffs' allegations as true. Plaintiffs allege that they owed only $438,367.92—the sum of the Final Judgment's 431,287.28 total and $7,080.64 for one-hundred twelve days of interest. *See* (Doc. 49 ¶58). Significantly, the purported $450,000 offer constituted a notably larger amount than this $438,367.92 total. Indeed, Plaintiffs allege that they shortly thereafter transferred the Updated Payoff Quote's total, which included the Remaining Amount, to complete the closing on April 30, 2018, because, otherwise, they risked losing the private sale of their home. (Doc. 49 ¶61–62). Plaintiffs' apparent rejection of the $450,000 offer and payment of the Updated Payoff Quote does not somehow render valid the Remaining Amount. Thus, PNC's argument is unavailing.

Finally, PNC argues that Plaintiffs could have exercised their statutory right of redemption, pursuant to Florida Statutes § 45.0315.[13] "The right of redemption is a common law and statutory

---

[12] Nor does this exhibit conflict with the allegations in the Amended Complaint. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

[13] PNC also argues that Plaintiffs could have: (1) "continued negotiating and/or sought to extend the Closing Date in order to allow time for their counsel's questions to be answered"; or (2) "sought emergency relief from the trial court and called their 'dispute' over the figures to the court's

right incident to every mortgage." *Morris v. Osteen*, 948 So.2d 821, 825 (Fla. 5th DCA 2007).

When used with respect to a mortgagor, the phrase "right of redemption" references "the right of

a mortgagor, before being foreclosed from that right, to satisfy the mortgage indebtedness and thus

clear the property from the encumbrance of the mortgage." *Id.* The statute provides:

> At any time before the later of the filing of a certificate of sale by
> the clerk of the court or the time specified in the judgment, order, or
> decree of foreclosure, the mortgagor or the holder of any
> subordinate interest may cure the mortgagor's indebtedness and
> prevent a foreclosure sale by paying the amount of moneys specified
> in the judgment, order, or decree of foreclosure, or if no judgment,
> order, or decree of foreclosure has been rendered, by tendering the
> performance due under the security agreement, including any
> amounts due because of the exercise of a right to accelerate, plus the
> reasonable expenses of proceeding to foreclosure incurred to the
> time of tender, including reasonable attorney's fees of the creditor.
> Otherwise, there is no right of redemption.

Fla. Stat. § 45.0315.

Referencing this language, PNC merely asserts that Plaintiffs could have exercised this

right. (Doc. 70 at 3, 13). Without specifically addressing the right of redemption, Plaintiffs agree

that Florida law permits PNC's collection of certain amounts advanced by PNC to collect its

collateral after the Final Judgment's entry, emphasize that its claim does not contradict Florida

law, and, significantly, reiterate that the issue is PNC's failure to follow the Final Judgment's

procedures for the collection of such amounts. (Doc. 73 at 7). As emphasized above, the FCCPA

prohibits a person, in collecting a debt, from claiming, attempting, or threatening to enforce such

debt when the person knows that the debt is illegitimate, or asserting the existence of a legal right

when the person knows that such right is non-existent. Fla. Stat. § 559.72(9). Whether Plaintiffs

could have exercised their statutory right of redemption to satisfy their indebtedness and clear the

---

attention." (Doc. 70 at 13). Neither of these arguments are persuasive in light of the Court's
assumption of Plaintiffs' allegations as true.

Property from the Mortgage does not defeat Plaintiffs' allegation at this stage of the litigation that PNC improperly attempted to collect the Remaining Amount as part of the debt owed under the Final Judgment after Plaintiffs requested the amount to pay off the loan. Plaintiffs allege that PNC should have sought the Remaining Amount by moving to amend the Final Judgment, rather than seeking such amount through the Updated Payoff Quote. Accepting Plaintiffs' allegations as true, the FCCPA claim against PNC survives this attack on the pleading.

Accordingly, PNC's argument that the Amended Complaint must be dismissed because the Mortgage, the Final Judgment, and Florida law entitled PNC to collect additional sums post-judgment is unpersuasive.

### ii. PNC's Actual Knowledge

PNC further argues that the FCCPA claim against PNC must be dismissed because Plaintiffs failed to state that PNC had actual knowledge that the amounts sought were illegitimate and further failed to plead any facts supporting any actual knowledge by PNC. (Doc. 70 at 14–15). This argument is unavailing.

A plaintiff bringing a claim under § 559.72(9) must show that the defendant had actual knowledge that the debt was illegitimate or that it was seeking to enforce a non-existent legal right. *Bacelli v. MFP, Inc.*, 729 F. Supp. 2d 1328, 1337 (M.D. Fla. 2010) (Whittemore, J.) ("Section [559.72(9)] requires by its terms *actual knowledge*.") (emphasis in original); *see LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 n.12 (11th Cir. 2010) (stating that § 559.72(9) of the FCCPA requires the plaintiff to show that the defendant "possessed *actual knowledge* that the threatened means of enforcing the debt was unavailable") (emphasis in original). District courts within the Eleventh Circuit, including this Court, have analyzed, at the pleading stage, whether a plaintiff who brings a claim under § 559.72(9) sufficiently pleads that the defendant had actual

knowledge. *E.g.*, *Williams v. Educ. Credit Mgmt. Corp.*, 88 F. Supp. 3d 1338, 1347 (M.D. Fla. 2015) (Honeywell, J.) (recognizing that § 559.72(9) "requires actual knowledge" in ruling on the defendant's motion to dismiss); *Lima v. Bank of Am., N.A.*, 249 F. Supp. 3d 1308, 1313 (S.D. Fla. 2017) (concluding that, even assuming that the alleged debt was illegitimate, the plaintiff failed to plead sufficient facts to establish that the defendants had actual knowledge that she did not owe such debt); *Bentley*, 773 F. Supp. 2d at 1372–73 (citing to caselaw discussing actual knowledge in the context of analyzing a motion to dismiss).

Despite PNC's claim that Plaintiffs fail to allege sufficient facts to show PNC's actual knowledge because the Amended Complaint sets forth only a formulaic recitation of the claim's elements, a review of Plaintiffs' allegations demonstrates otherwise. (Doc. 70 at 15). PNC received the Final Judgment in its favor, which itemized the amount owed and due to PNC. (Docs. 49 ¶30; 49-1 at 2). Plaintiffs asked PNC for a payoff figure to secure the exact amount needed for the closing. (Doc. 49 ¶38). After receiving the Original Payoff Quote, which ALAW sent on PNC's behalf, Plaintiffs' counsel explicitly notified PNC of his objections by sending the "Notice of Error and Updated Payoff Request" to PNC, which advised PNC that the Original Payoff Quote's total contained "incorrect and illegitimate amounts not allowable by law or contract" and advised that "only post-judgment interest (and a few other incidental costs or fees) may be added to the total amount currently due and owing." (Docs. 49 ¶¶44–45; 49-3 at 2). Plaintiffs' counsel advised that the "Escrow" and "Corporate Advance" costs were not owed on the loan. (Doc. 49-3 at 2). Plaintiffs' counsel thereafter repeatedly reiterated his objections to ALAW, which "acted on behalf of, with the approval of, and with full authority on behalf of, PNC within the scope of ALAW's relationship with PNC." (Docs. 49 ¶¶28, 52; 49-6 at 2).

The communication continued. After not receiving further explanation, despite telephone calls, voicemails, and e-mails, Plaintiffs' counsel again requested to discuss the discrepancies on April 16, 2018. (Doc. 49 ¶54). In response, an ALAW attorney informed Plaintiffs' counsel that he was "attempting to resolve the issue"—the objections of Plaintiffs' counsel to certain amounts—with PNC. *Id.* at ¶55. Afterwards, Plaintiffs received the Updated Payoff Quote, which included a larger total to pay off the loan. *Id.* at ¶56. While this total differed from the Original Payoff Quote's total, the Updated Payoff Quote nonetheless included the same categories of purportedly owed amounts to which Plaintiffs' counsel had objected in the Notice and subsequent communications. (Docs. 49-2 at 2; 49-7 at 2). On this basis, Plaintiffs allege that PNC violated § 559.72(9) by attempting to collect an alleged debt with knowledge that such debt was illegitimate or by asserting the existence of a legal right with the knowledge that such right was non-existent. (Doc. 49 ¶74).

These allegations, when taken as true, permit the Court to reasonably infer that PNC gained actual knowledge of the purported illegitimacy of the debt or that it was asserting the existence of some other legal right when it knew that such right was non-existent. *See Bank of Am. v. Zaskey*, No. 9:15-cv-81325-ROSENBERG/HOPKINS, 2016 WL 2897410, at *13 (S.D. Fla. May 18, 2016) (holding that the counter-plaintiffs sufficiently alleged a § 559.72(9) claim where they alleged that Bank of America had actual knowledge of the debt's invalidity because they alleged that they had advised Bank of America's representatives that the short sale had closed and the debt was thus illegitimate); *Williams*, 88 F. Supp. 3d at 1347 (holding that the allegations permitted the Court to reasonably infer that the defendant had gained actual knowledge that the plaintiff was not the owner of the debt where parties informed or attempted to inform the defendant that the plaintiff was not the owner of the debt several times). Whether Plaintiffs will be able to prove actual

knowledge following discovery remains to be seen, but Plaintiffs sufficiently allege PNC's actual knowledge.

**IV.    CONCLUSION**

The Court will dismiss Plaintiffs' FDCPA claim without prejudice and grant Plaintiffs leave to file a second amended complaint. Because Plaintiffs will be granted leave to file another complaint, the Court will deny without prejudice PNC's request for the Court to strike Plaintiffs' jury demand in the Amended Complaint.

Accordingly, it is **ORDERED**:

1. Defendant James E. Albertelli, P.A.'s Motion to Dismiss Amended Complaint, (Doc. 57), is **GRANTED** to the extent that the Court dismisses Count II of Plaintiffs' Amended Complaint.

2. Count II of Plaintiffs' Amended Complaint, (Doc. 49), is **DISMISSED WITHOUT PREJUDICE**.

3. Defendant PNC Bank, N.A.'s Motion to Dismiss Amended Complaint with Prejudice and to Strike Demand for Jury Trial, (Doc. 70), is **DENIED** to the extent that the Court denies the request to dismiss the Amended Complaint with prejudice and denies without prejudice the alternative request to strike Plaintiffs' jury demand.

4. Plaintiffs are granted leave to file a second amended complaint within **FOURTEEN (14) DAYS** of the date of this Order, which corrects the deficiencies discussed herein. Failure to file a second amended complaint within the time permitted may result in the Court declining to exercise supplemental jurisdiction over this action and remanding the action to state court by separate order without further notice.

**DONE AND ORDERED** in Tampa, Florida on February 4, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any