UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBORAH M. SHALLENBURG and
MICHAEL P. SHALLENBURG,
individuals,

      Plaintiffs,

v.

Case No.: 8:18-cv-2225-T-36TGW

PNC BANK, NATIONAL
ASSOCIATION, d/b/a PNC MORTGAGE,
and JAMES E. ALBERTELLI, P.A. a Florida
for-profit corporation, d/b/a "ALAW"

      Defendants.
_____/

**SECOND AMENDED[1] COMPLAINT**

**COME NOW**, Plaintiffs, DEBORAH M. SHALLENBURG and MICHAEL P. SHALLENBURG (hereinafter, "Plaintiffs"), by and through the undersigned counsel, and hereby sue Defendants, JAMES E. ALBERTELLI, P.A. d/b/a "ALAW" (hereinafter, "ALAW") and PNC BANK, NATIONAL ASSOCIATION, d/b/a PNC MORTGAGE (hereinafter, "PNC") (hereinafter collectively, "Defendants"). In support thereof, Plaintiffs state:

**PRELIMINARY STATEMENT**

1. This is an action for damages brought by individual consumers for Defendants' violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA") and ALAW's violations of the Fair Debt Collection Practices Act, 15 United States Code, Section 1692a *et. seq* (hereinafter, the "FDCPA"), wherein Defendants unlawfully attempted to collect—and did collect—an alleged and illegitimate debt directly from

---

[1] Filed pursuant to the Court's Order dated February 4, 2020 [Dkt. 82].

1

Plaintiffs by charging unauthorized and unsubstantiated fees incident to the payoff of Plaintiffs' mortgage and associated note.

## JURISDICTION, VENUE & PARTIES

2. This is an action for damages that exceeds $15,000.00, exclusive of attorneys' fees and costs.

3. Jurisdiction and venue for purposes of this action are conferred by Florida Statutes, Section 559.77 and 15 United States Code, Section 1692k(d).

4. At all material times herein, the conduct of the Defendants, complained of below, occurs in Pinellas County, Florida.

5. At all material times herein, Plaintiffs are individuals residing in Pinellas County, Florida.

6. At all material times herein, Defendant ALAW is a Florida for-profit corporation with its principal place of business located at 208 N. Laura Street, Suite 900, Jacksonville, FL 33202, that, itself and through its subsidiaries, regularly collects debts from consumers in Pinellas County, Florida.

7. At all material times herein, Defendant PNC Bank, National Association (hereinafter, "PNC" or "PNC Bank, N.A.") is a Pennsylvania for-profit national association with its principal place of business located at 300 Fifth Avenue, Pittsburgh, PA 15222, that itself and through its subsidiaries, regularly extends, services, and collects debts from consumers in Pinellas County, Florida.

8. At all material times herein, PNC Bank, N.A. does business under the fictitious name "PNC Mortgage" which is registered with the Florida Department of State, Division of Corporations.

9. At all material times herein, ALAW uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of debts.

10. At all material times herein, ALAW regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

11. ALAW advertises itself as a debt collector on its website.

12. More specifically, ALAW advertises:

 a itself as a "full-service collections firm" that "specializes in creditors' rights litigation."

 b that it is "well suited to handle all creditors' collection needs in all represented states, including consumer credit…"

 c that it will "work diligently to recover your lost dollars and, if unsuccessful, our collections litigation department is prepared to take the case to suit, obtain judgment, and collect on the judgment…"

 d that it "represents loan servicers, lenders and investors in judicial and non-judicial foreclosure matters in Alabama, Arkansas, Florida, Georgia, North Carolina, Ohio, South Carolina, Tennessee, Texas and the U.S. Virgin Islands.

13. ALAW actually undertakes and completes the debt collection activities and efforts described on its website.

14. ALAW also advertises that it "represents institutional and private lenders, as well as investors, throughout the loan life cycle from securitization to origination and asset reclamation.'

15. Further, in its correspondence sent to Plaintiffs and Plaintiffs' counsel, ALAW repeatedly advised that "this is an attempt to collect a debt. Any information will be used for that

purpose." *See, e.g.,* Ex B at p. 1; *see also* Ex. E at p. 2 (stating "THIS LAW FIRM MAY BE DEEMED A 'DEBT COLLECTOR' UNDER THE FAIR DEBT COLLECTION PRACTICES ACT. ANY AND ALL INFORMATION OBTAINED MAY BE USED FOR THE PURPOSE OF COLLECTING A DEBT.")

16. Additionally, ALAW regularly collects debts—on behalf of others—in this District by suing hundreds of consumers for mortgage foreclosure, and in such instances, ALAW generally seeks a judgment on the note and reservation of jurisdiction for enforcement of a deficiency judgment.

17. ALAW also regularly files lawsuits against consumers in Florida to collect mortgage deficiency balances separate and apart from foreclosure proceedings.

18. In Pinellas County alone, a search of court docket filings shows that ALAW has attempted (or is attempting) to collect debt from consumers—on behalf of others—via the filing of lawsuits. For example:

    a    ALAW filed *at least* one-hundred forty-three (143) such lawsuits attempting to collect a debt under Bar Number 28046 since 2010.

    b    ALAW filed *at least* one-hundred thirty-one (131) such lawsuits attempting to collect a debt under Bar Number 96533 since 2007.

    c    ALAW filed *at least* twenty-two (22) such lawsuits attempting to collect a debt under Bar Number 85039 since 2012.

19. The above-referenced examples are a small subset of lawsuits regularly filed by ALAW against consumers attempting to collect a debt on behalf of another.

20. At all material times herein, PNC Bank, N.A. is a wholly owned subsidiary, agent, and division of PNC Bankcorp, Inc.; PNC Bankcorp, Inc. is owned by The PNC Financial Services Group, Inc.

21. At all material times herein, Defendant PNC Bank, N.A. acted on its own or through PNC Bankcorp, Inc., The PNC Financial Services Group, Inc., James E. Albertelli, P.A., d/b/a "ALAW," or each.

## FCCPA AND FDCPA STATUTORY STRUCTURE

22. The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

23. The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts. 15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

24. Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

25. For example, the FDCPA prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt, and prohibits a person from communicating directly with a debtor known to be represented by an attorney in an attempt to collect a consumer debt. *See* 15 U.S.C. §§ 1692(d)-(e).

26. Similarly, the FCCPA prohibits a person from collecting consumer debt by communicating with the consumer in a manner that can be expected to harass or abuse the consumer debtor, and also prohibits a person from communicating directly with a consumer when such person knows the consumer is represented by legal counsel with respect to such debt. *See* Fla. Stat. § 559.72(7) and 559.72(18).

**GENERAL ALLEGATIONS**

27. At all material times herein, PNC is a "creditor" as defined by Florida Statutes, Section 559.55(5).

28. At all material times herein, Plaintiffs are "debtor(s)" or "consumer(s)" as defined by the FCCPA and FDCPA.

29. At all material times herein, ALAW is a "debt collector" as defined by the FCCPA and FDCPA, and as supported by the allegations above in paragraphs 9-19.

30. At all material times herein, Defendants attempted to collect a debt allegedly incurred incident to a mortgage encumbering Plaintiffs' homestead residence (hereinafter, the "Debt").

31. At all material times herein, the Debt is a consumer debt, incurred primarily for personal, household, or family use.

32. At all material times herein, Defendants are each a "person" subject to Florida Statutes, Section 559.72. *See* Fla. Stat. § 559.55(5); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

33. At all material times herein, Defendants' conduct, with respect to the Debt complained of below, qualifies as "communication" as defined by the FCCPA and FDCPA.

34. Specifically, at all material times herein, the Original Payoff Quote (as defined *infra*) was a "claim, attempt, or threat[] to enforce a debt" as defined by Florida Statutes, Section 559.72(9).

35. At all material times herein, the Updated Payoff Quote (as defined *infra*) was a "claim, attempt, or threat[] to enforce a debt" as defined by Florida Statutes, Section 559.72(9).

36. At all material times herein, Defendants acted themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

37. At all material times herein, ALAW acted on behalf of, with the approval of, and with full authority on behalf of, PNC within the scope of ALAW's agency and creditor-debt collector relationship with PNC.

38. All necessary conditions precedent to the filing of this action occurred or Defendants waived the same.

**FACTUAL ALLEGATIONS**

39. On or about December 30, 2014, PNC filed a mortgage foreclosure action against Plaintiffs in the Sixth Judicial Circuit in and for Pinellas County, Florida styled *PNC Bank National Association v. Michael P. Shallenburg, Deborah M. Shallenburg, et al.*, Case Number 15-000043-CI (hereinafter, "Foreclosure Case").

7

40. The Foreclosure Case concerned the mortgage and promissory note on Plaintiffs' homestead residence located at 769 45th Avenue Northeast, St. Petersburg, Florida 33703 (hereinafter, "The Home").

41. On or about May 18, 2016, ALAW, its affiliate or predecessor in interest, "Albertelli Law" was substituted as counsel for PNC in the Foreclosure Case.

42. ALAW substituted in as counsel for PNC in the Foreclosure Case in part to collect a debt from Plaintiffs.

43. On or about January 10, 2018, the state court entered a final judgment of foreclosure[2] (hereinafter, "Final Judgment") against Plaintiffs—in favor of PNC—in the amount of $431,287.28 (hereinafter, "Final Judgment Amount"). Please see a true and correct copy of the Final Judgment attached as "Exhibit A."

44. The Final Judgment provided for a court sale date of May 10, 2018 (hereinafter, "Court Sale Date"). *Id*.

45. The Final Judgment set the total sum that PNC was entitled to recover against Plaintiffs (i.e., $431,287.28) and also itemized the same into categories of: (1) principal; (2) interest; (3) late charges; (4) costs; (5) property inspections; (6) escrow advance; and (7) attorneys' fees. *Id*.

46. In order to add any amounts to the Final Judgment except post-judgment interest, the Final Judgment explicitly required as follows:

> If the Plaintiff incurs additional expenses subsequent to the entry of this final judgment but prior to the sale date specified in Paragraph 6, Plaintiff may, by written motion served on all parties and

---

[2] Under Florida law, the doctrine of merger provides that when a valid and final judgment or stipulation is rendered to enforce a debt, the debt instrument(s) upon which the agreement is/are predicated merge into the modified agreement, and the debt's independent existence terminates. *See U.S. Bank National Association v. Hefter*, Case No. 0:16-cv-61911-UU, 2017 WL 6949218 at *8-9 (S.D. Fla. 2017).

8

adjudication at a hearing with notice, seek to amend this final judgment to include said additional expenses. *Id.*

47. To be clear, after the entry of the Final Judgment, Defendants <u>did not</u> file a written motion to amend the final judgment to include any additional expenses.

48. Prior to the Court Sale Date, Plaintiffs obtained a private contract for the sale of their Home with a closing date of April 30, 2018 (hereinafter, "Closing").

49. In order to obtain the precise amount required for the Closing—inclusive of the Final Judgment's authorized post-judgment interest of 5.53% per year—Plaintiffs sent a letter to PNC requesting a payoff figure of the loan.

50. On or about March 27, 2018, Plaintiffs—via their authorized third-party title agent—received a response letter dated March 23, 2018 from ALAW.

51. In other words, ALAW—as PNC's agent and debt collector—responded to Plaintiffs' payoff request, and the response advised that "THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION WILL BE USED FOR THAT PURPOSE."

52. ALAW and PNC's March 23, 2018 response to the payoff request advised that the Final Judgment amount of $431,287.28 had been allegedly increased by the following amounts: (1) 84 days of post-judgment interest of $5,310.48; (2) Escrow of $9,383.00; (3) Net Other Fees (Inspections) of $45.00; (4) Recording of $10.00; (5) Corporate Advance of $8,923.76; and (6) Outstanding Attorney Fees and Costs Not Included in Corporate Advances of $200.00.  Please see a true and correct copy of Defendant's March 23, 2018 letter attached as "Exhibit B."

53. The sum of all charges plus principal contained in Defendant's March 23, 2018 letter was $455,159.52 (hereinafter, "Original Payoff Quote"). *Id.*

54. In total, the Original Payoff Quote was $23,872.24 higher than the Final Judgment Amount.  *See* Exs. A; B.

9

55. Of the sums added to the Final Judgment Amount by the Original Payoff Quote, only the 84 days of post-judgment interest at a total of $5,310.48 was authorized pursuant to the Final Judgment. *See* Ex. A.

56. In other words, Defendants' Original Payoff Quote attempted to collect an additional $18,561.76 from Plaintiffs that was not authorized by the Final Judgment.

57. Again, at no time—before or after Defendants provided the Original Payoff Quote—did PNC or ALAW file any motion in the Foreclosure Case to amend the Final Judgment to include the Original Payoff Quote's alleged additional $9,383.00 in "Escrow," $45.00 in "Net Other Fees (Inspections)," $10.00 in "Recording," "$8,923.76 in "Corporate Advance," or the $200.00 in "Outstanding Attorney Fees and Costs Not Included in Corporate Advances" to the Final Judgment.

58. To be clear, ALAW—on behalf of PNC—sent the Original Payoff Quote to Plaintiffs through their third-party title agent (i.e., Defendants did not send the Original Payoff Quote to Plaintiffs' legal counsel).

59. On April 5, 2018, counsel for Plaintiffs sent a Notice of Error and Updated Payoff Request to ALAW along with a third-party authorization form. Please see a true and accurate copy of the e-mail transmitting and the Notice of Error attached as "Exhibit C."

60. Plaintiffs' April 5, 2018 letter disputed the unauthorized post-judgment amounts and requested a specific itemization of the alleged "Escrow" and "Corporate Advance" charges. *Id*.

61. On April 6, 2018, ALAW's "REI/PO Dept." sent a reply e-mail advising that additional time would be required to respond because "we do not have the information from our

client [PNC] at this time in order to prepare the letter for you." Please see a true and correct copy of the response attached as "Exhibit D."

62. On April 6, 2018, ALAW's employee Tora Spraggs responded to Plaintiffs' counsel, as to the <u>escrow issue</u> and stated that, "the client [PNC] indicates they've paid an additional $9,383.00 in escrow since entering the final judgment which they are allowed to have recouped on their behalf." Please see a true and correct copy of the April 6, 2018 response attached as "Exhibit E."

63. Also, in the April 6, 2018 response, ALAW's employee Tora Spraggs responded to Plaintiffs' counsel, as to the <u>corporate advances</u> issue and stated that, its client [PNC] showed a total corporate advance of $10,068.76, of which $3,450.00 was included in the Final Judgment Amount. *Id*.

64. Ms. Spraggs continued her explanation by stating that $455.00 represented fees billed on May 3, 2017 and $690.00 represented fees and costs billed on January 11, 2018, both of which were included in the final judgment's "Attorney Fee" line item that totaled $3,450.00. *Id*.

65. In conclusion, Ms. Spraggs reached the remaining corporate advance figure by subtracting the $455.00 and $690.00 (which were allegedly already included in the Final Judgment) from her client's [PNC] total corporate advance of $10,068.76, leaving a remainder of $8,923.76. *Id*.

66. Later on April 6, 2018, Plaintiffs' counsel responded, again disputing both the escrow and corporate advance charges and requesting a conversation concerning the same.

67. On April 9, 2018, ALAW responded, CCing an ALAW attorney in order to arrange a time to speak, and providing figures allegedly showing a flood policy charge incurred prior to the Final Judgment and a hazard policy charge allegedly incurred approximately three months after

the Final Judgment. Please see a true and correct copy of the April 9, 2018 response attached as, "Exhibit F."

68. On April 16, 2018, having received no further explanation despite calls, voicemails, and e-mails, Plaintiffs' counsel again reiterated his request to speak with the ALAW's employees about the discrepancies.

69. On April 17, 2018, ALAW attorney Chad Sliger responded that he was attempting to resolve the issue with PNC.

70. On or about April 26, 2018, ALAW provided an updated payoff figure on behalf of PNC (hereinafter, "Updated Payoff Quote") dated April 20, 2018 that contemplated alleged amounts due through and including May 1, 2018.

71. Defendants' Updated Payoff Quote advised that "THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION WILL BE USED FOR THE PURPOSE."

72. The amount of the Updated Payoff Quote was $457,018.68. Please see a true and correct copy of the Updated Payoff Quote attached as, "Exhibit G."

73. In total, the Updated Payoff Quote was $25,731.40 higher than the Final Judgment Amount. *See* Exs. A; G.

74. To be clear, Defendants did not file a written motion to amend the final judgment to include any additional expenses prior to sending Plaintiffs the Updated Payoff Quote.

75. Of the sums added to the Final Judgment Amount by the Updated Payoff Quote, only the 112 days of post-judgment interest at a total of $7,080.64 was authorized pursuant to the Final Judgment. *See* Ex. A.

76. Therefore, $18,650.76 of the Updated Payoff Quote was not authorized to be added to the Final Judgment amount without following the specific and explicit procedures required by the Final Judgment and obtaining judicial approval.

77. Again, at no time—before or after Defendants provided the Updated Payoff Quote—did PNC or ALAW file any motion in the Foreclosure Case to amend the Final Judgment to include the Updated Payoff Quote's additional $9,383.00 in "Escrow," $60.00 in "Net Other Fees (Inspections)," $10.00 in "Recording," "$8,997.76 in "Corporate Advance," or the $200.00 in "Outstanding Attorney Fees and Costs Not Included in Corporate Advances" to the Final Judgment.

78. Plaintiffs, in order to complete the Closing on April 30, 2018, transferred—via wire transfer—$457,018.68 to Defendant ALAW's Trust Account on behalf of PNC.

79. The $457,018.68 wired to the Defendants contemplated full payment of the Updated Payoff Quote of $457,018.68, because Plaintiffs had no other choice but to pay the inflated and unauthorized amounts or they risked losing the private sale of their Home. Please see a true and correct copy of the wire transfer attached as, "Exhibit H."

80. Following the Plaintiffs' payment, ALAW and PNC filed a "Motion to Cancel May 10, 2018 Foreclosure Sale, Vacate Final Judgment, Dismiss Cause of Action and Return Original Note."

81. On May 9, 2018, ALAW and PNC obtained an order vacating the Final Judgment and Dismissing the Case.  Please see a true and correct copy of the Order attached as "Exhibit I."

82. At no time did ALAW or PNC petition the state Court to amend the Final Judgment prior to vacation of the judgment and dismissal of the Foreclosure Case.

83. Altogether, via the Original Payoff Quote and Updated Payoff Quote, Defendants demanded—and attempted to collect—$18,650.76 in unauthorized amounts from Plaintiffs.

84. On or about May 23, 2018, subsequent to Plaintiffs paying the entire Updated Payoff Quote amount in order to not lose the private sale of their Home, Plaintiffs received a refund from Wright Flood for the alleged advanced flood policy premium in the amount of $4,882.00.

85. Additionally, on or about August 1, 2018—i.e. <u>after</u> Plaintiffs filed their original Complaint—PNC sent Plaintiffs two additional refund checks in the amounts of $10,714.82 and $60.00.  The letters PNC sent with said refund checks do not explain or itemize why or how PNC determined that Plaintiffs were owed a refund in these amounts.

86. Altogether, Plaintiffs have received refunds in the total amount of $15,656.82 from PNC and Wright Flood.

87. Therefore, ALAW and/or PNC still unlawfully retain *at least* $2,993.94 of Plaintiffs' money (i.e., $18,650.76 in unauthorized charges in the Payoff Quotes minus $15,656.82 in refunds received).

88. In addition to actual damages in the form of pecuniary loss, and as a direct result of Defendants' above-referenced actions, Plaintiffs suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, confusion, and loss of sleep.

89. Plaintiffs retained the undersigned counsel for the purpose of pursuing this matter against Defendants, and Plaintiffs are obligated to pay their attorneys a reasonable fee for their services.

90. Florida Statutes, Section 559.77 provides for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, declaratory and injunctive relief, and an award of attorneys' fees and costs to Plaintiffs, should Plaintiffs prevail in this matter against Defendants.

91. United States Code, Title 15, Section 1692k provides for the award of up to $1,000.00 statutory damages, actual damages, and an award of attorneys' fees, and costs to Plaintiffs, should Plaintiffs prevail in this matter against ALAW.

## COUNT ONE:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)

Plaintiffs re-allege paragraphs one (1) through ninety-one (91) as if fully restated herein and further state as follows:

92. Defendants are subject to, and each violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect illegitimate and alleged Debt with knowledge that the illegitimate and alleged Debt is not legitimate or asserting the existence of a legal right with the knowledge that the right does not exist.

93. Specifically, Defendants demanded unauthorized amounts from Plaintiffs (i.e., $18,650.76) within the Original and Updated Payoff Figures.

94. Although Plaintiffs disputed said unauthorized amounts, and although Defendants never exercised any of the judicial avenues explicitly required to legitimize any portion of these unauthorized amounts, Defendants nevertheless required payment of all unauthorized amounts in order for Plaintiffs to satisfy the Final Judgment.

95. Defendants each knowingly attempted to collect such unauthorized amounts from Plaintiffs, because each Defendant knew the explicit requirements of the Final Judgment, and each Defendant received notice of Plaintiffs' dispute of the unauthorized amounts.

96. During the course of their successful attempt to collect the unauthorized amounts, Defendants knowingly and falsely asserted the unauthorized amounts as legitimate and falsely

asserted that Defendants possessed the legal right to collect the unauthorized amounts from Plaintiffs without following the explicit procedures required by the Final Judgment.

97. Moreover, even to this day, ALAW and/or PNC retain *at least* $2,993.94 of Plaintiffs' money due to their unlawful debt collection.

98. As a direct and proximate result of Defendant's actions, Plaintiffs sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692e and 1692f**

Plaintiffs re-allege paragraphs one (1) through ninety-one (91) as if fully restated herein and further state as follows:

99. Defendant ALAW is subject to, and violated the provisions of, United States Code, Sections 1692e and 1692f by using false, deceptive, and misleading representations in connection with collecting the Debt/Unauthorized Amounts, and by using unfair and unconscionable means to collect the Debt/Unauthorized Amounts.

100. Specifically, ALAW demanded the above-referenced unauthorized amounts (i.e., $18,650.76) from Plaintiffs within the Original and Updated Payoff Figures.

101. Although Plaintiffs disputed said unauthorized amounts, and although ALAW never exercised any of the judicial avenues explicitly required to legitimize any portion of these unauthorized amounts, Defendant nevertheless required payment of all unauthorized amounts in order for the Plaintiffs to satisfy the Final Judgment.

102. During the course of its successful attempt to collect these unauthorized amounts from Plaintiffs, ALAW knowingly and falsely asserted the unauthorized amounts as legitimate and

falsely asserted that ALAW possessed the legal right to collect the unauthorized amounts from Plaintiffs without following the explicit procedures required by the Final Judgment.

103. Moreover, even to this day, ALAW may retain *at least* $2,993.94 of Plaintiffs' money due to its unlawful debt collection. It is unclear whether ALAW or PNC retains this amount, because Plaintiffs wired the Updated Payoff Quote payment to ALAW's trust account, but it was PNC that refunded certain amounts to Plaintiffs (as referenced in paragraph 83).

104. Accordingly, Defendant ALAW violated 15 United States Code, Sections 1692e(2)(A), 1692e(5), 1692e(10), and 1692f(1)

105. As a direct and proximate result of ALAW's actions, Plaintiffs sustained damages as defined by United States Code, Section 1692k.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiffs respectfully request:

    a. Judgment against Defendants declaring that both Defendants violated the FCCPA;

    b. Judgment against both Defendants for maximum statutory damages for violations of the FCCPA;

    c. Judgment against Defendant ALAW for maximum statutory damages for violations of the FDCPA;

    d. Actual damages in an amount to be determined at trial;

    e. Punitive damages in an amount to be determined at trial;

    f. An award of attorneys' fees and costs; and

    g. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues triable by right.

> Respectfully Submitted,
>
> **SWIFT, ISRINGHAUS & DUBBELD, P.A.**
>
> /s/ *Aaron M. Swift*
> Jordan T. Isringhaus, Esq., FBN 0091487
> **Aaron M. Swift, Esq., FBN 0093088**
> Jon. P. Dubbeld, Esq., FBN 0105869
> Sean E. McEleney, Esq., FBN 125561
> 10460 Roosevelt Blvd. N, Suite 313
> St. Petersburg, FL 33716
> Phone: (813) 563-8466
> Fax: (727) 255-5332
> jisringhaus@swift-law.com
> aswift@swift-law.com
> jdubbeld@swift-law.com
> smceleney@swift-law.com
> *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 18, 2020, I electronically filed a true and correct copy of the above and foregoing *Second Amended Complaint* via CM/ECF which will electronically serve all counsel of record.

> /s/ *Aaron M. Swift*
> Attorney for Plaintiffs